2020 IL App (2d) 190883
No. 2-19-0883
Opinion filed September 21, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a Christiana Trust, as Owner Trustee of the Residential Credit Opportunities Trust III, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-CH-1362 |
| MARTA C. BARRERA, EDSON BARRERA, THE NORTH SHORE WATER RECLAMATION DISTRICT, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, | ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable |
| (Marta C. Barrera and Edson Barrera, Defendants-Appellees). | ) ) | Patricia L. Cornell, Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     Wilmington Savings Fund Society, FSB, doing business as Christiana Trust as Owner-Trustee of the Residential Credit Opportunities Trust III (Wilmington), appeals from an order that dismissed its foreclosure complaint, the fourth relating to the same secured loan, as barred by the single refiling rule. Wilmington's complaint alleged that the mortgagor, Marta C. Barrera (Marta),

defaulted on the mortgage by failing to pay (or reimburse Wilmington for) real estate taxes and property insurance payments. Marta and her husband, Edson Barrera (Edson), who was sued as a person with potential homestead rights, contend that the Illinois Supreme Court's holding in *First Midwest Bank v. Cobo*, 2018 IL 123038, establishes that the single refiling rule applies here to bar Wilmington's action. For the reasons to follow, we hold that the single refiling rule is not a complete bar to Wilmington's action.

¶ 2                                    I. BACKGROUND

¶ 3      Wilmington, the holder of the sole mortgage on the property at 1404 Muirfield Avenue in Waukegan, filed its foreclosure action against the mortgagor, Marta, on December 7, 2018. Wilmington also named as defendants Edson and North Shore Water Reclamation District as a possible lienholder. The complaint alleged four defaults: (1) failure to reimburse Wilmington for payments it made for insurance on the property, (2) failure to reimburse Wilmington for property taxes it paid on the property, (3) failure to pay for insurance on the property directly, and (4) failure to pay the property taxes on the property directly. Wilmington alleged that it or its predecessor mortgagees had advanced $7193.42 for hazard insurance and $16,561.70 for real estate taxes.

¶ 4      According to the exhibits attached to the complaint, the original lender was First Magnus Financial Corporation (First Magnus). First Magnus and Marta executed the mortgage and note in April 2006. The mortgage required the borrower to include with the monthly payment of principal and interest (as set forth in the note) an amount to cover the taxes on the property. The mortgage also required the borrower to maintain hazard insurance on the property. If the borrower failed to maintain hazard insurance or include tax payments in the monthly payment, the lender had the right to make its own payments for insurance and taxes. These payments would become additional debt secured by the mortgage.

¶ 5 After the mortgage was executed, it passed through several assignments. Wells Fargo became one of the successor mortgagees. Wilmington then succeeded to the mortgage, as documented by the exhibits to the complaint.

¶ 6 The Barreras appeared through counsel and filed a motion to dismiss the complaint under sections 2-619(a)(4) and (a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4), (a)(9) West 2018)). Section 2-619(a)(4) permits dismissal when a prior judgment bars the cause of action, and section 2-619(a)(9) permits dismissal when some other affirmative matter bars the asserted claim. The Barreras cited the single refiling rule of section 13-217 of the Code (735 ILCS 5/13-217 (West 1994))[1] as the other affirmative matter barring the foreclosure claim. They noted that (1) Wilmington's predecessor in interest, Wells Fargo, had filed two earlier foreclosure cases relating to the mortgage at issue, and (2) Wilmington itself had also earlier filed a foreclosure case. Relying on the holding in *Cobo*, the Barreras asserted that the single refiling rule barred claims based on the defaults that Wilmington alleged. The exhibits to the motion included the complaints in the three prior actions and the orders dismissing those complaints:

1. In a foreclosure action filed June 19, 2012, Wells Fargo alleged that Marta was in default "for the monthly payments for September 2011 through the present." Wells Fargo sought the balance due on the note and mortgage, which was "the total of the

---

[1] The currently effective version of section 13-217 is the one codified in the Illinois Compiled Statutes of 1994: that version precedes the amendments to the Code by Public Act 89-7 (Pub. Act 89-7 (eff. Mar. 9, 1995)), an act that our supreme court found unconstitutional in its entirety. *E.g.*, *C. Szabo Contracting, Inc. v. Lorig Construction Co.*, 2014 IL App (2d) 131328, ¶ 43 & n.4.

principal balance *** plus interest, costs and fees, and advances if any made by [Wells Fargo]." Wells Fargo sought an *in personam* deficiency judgment.

The circuit court dismissed this complaint without prejudice on April 4, 2013.

2. In a foreclosure action filed July 8, 2014, Wells Fargo likewise alleged that Marta was in default "for the monthly payments for September 2011 through the present." Wells Fargo sought the balance due on the note and mortgage, which was "the total of the principal balance *** plus interest, costs and fees, and advances, if any, made by [Wells Fargo]." Wells Fargo sought an *in personam* deficiency judgment.

Wells Fargo voluntarily dismissed this second complaint on April 24, 2015.

3. In an action for default on the note filed on October 30, 2017, the current plaintiff, Wilmington, alleged that "[d]efault was made in the payment of the installments of principal and interest falling due under the terms of the Note; said default occurring on June 1, 2012."

On April 11, 2018, the circuit court dismissed this third complaint on the Barreras' motion. The court ruled that the suit was barred because the default dates alleged in the third complaint were at issue in the earlier two actions.

¶ 7    Wilmington, responding to the Barreras' motion, argued that their failure to make payments for insurance and property taxes was the sole default claimed in the fourth foreclosure complaint; the payment of principal and interest was not at issue. It contended that the previous cases related to a default in payments of principal and interest, an obligation under the note, whereas the requirement to pay property taxes and maintain insurance is an obligation under the mortgage. It further noted that previous cases did not result in judgments on the merits. Thus, no prior filing barred Wilmington from suing on the defaults specific to the obligations under the

mortgage. In reply, the Barreras contended that Wilmington's position was not consistent with the holding of *Cobo*.

¶ 8 On June 20, 2019, the court granted the Barreras' motion to dismiss:

> "In applying the transactional test as identified in [*Cobo*,] this Court believes that this fourth lawsuit arises from the same single group of operative facts; the prior three lawsuits were seeking to adjudicate the parties' rights under the same mortgage and note; and the advances identified in the fourth complaint of real estate taxes and hazard insurance were specifically requested in the first and second complaints."

¶ 9 Wilmington filed a timely motion to reconsider or, in the alternative, for leave to amend the complaint. It argued that the circuit court erred in ruling that the first and second complaints sought to adjudicate defaults in insurance and property taxes payments: "Those [two] Complaints followed the [statutory] form complaint *** in *stating* that tax and insurance advances were due, but Plaintiff's prayers for relief [did] not *request* those amounts." (Emphases in original.) It asserted that those defaults were set out only in the " 'informational' " sections of the complaints. Alternatively, it asked for leave to file an amended complaint stating the dates of the defaults with more specificity. On September 12, 2019, the court denied Wilmington's motion in its entirety. Wilmington timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, Wilmington argues that the fourth foreclosure filing "allege[d] a separate, subsequent default and therefore does not violate the 'single re-filing' rule." Wilmington asserts that at least one default occurred after the third complaint's dismissal and, thus, neither it nor Wells Fargo could have raised that default in any of the prior filings. It asks us to take judicial notice that the first due date for Lake County real estate taxes was after the third case's dismissal.

Alternatively, it argues that the circuit court erred in failing to allow it to amend its complaint to make the dates of the defaults more specific.

¶ 12    The Barreras respond that the current complaint and the prior three complaints arose from a single group of operative facts. They argue that the first and second complaints both could have and did include claims for insurance and tax escrows, so that Wilmington, through its predecessor Wells Fargo, has raised the tax and insurance default twice before. They contend that *Cobo* is controlling here and mandates affirmance.

¶ 13    In reply, Wilmington concedes that, because it sought to accelerate the note, the single refiling rule might have barred it from claiming that any new defaults occurred on that note. It admits that "some courts" would hold that "[t]he acceleration of the principal and interest payments *** prevents a foreclosing plaintiff from bringing a separate foreclosure every time a mortgagor misses a monthly payment." See *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006, ¶ 41 (so holding). However, it contends that the mortgagor's tax and insurance obligations are different because the required payments cannot be reduced to a lump sum and cannot be accelerated. Thus, two types of default exist, "one which involves acceleration and one which involves ongoing obligations." Tax and insurance obligations are ongoing, according to Wilmington.

¶ 14    We hold that the single refiling rule was not a complete defense to Wilmington's fourth complaint. The single refiling rule cannot bar a complaint based on a later default: existing case law makes clear that, even when a prior judgment bars a claim based on a particular default, a claim based on a later default of the same kind is not barred. Marta's alleged new failures to pay taxes and insurance are new *defaults*. Contrary to what the Barreras argue, no equivalent of acceleration of a note exists for tax and mortgage payments. To be sure, the tax and insurance

defaults existing when Wilmington's predecessor filed the first two foreclosure complaints were part of the core of operative facts that formed the bases for those two complaints. However, Marta allegedly continued to default on her obligation to make tax and insurance payments after those complaints were dismissed. The single refiling rule does not bar a complaint based on those *new* defaults.

¶ 15    The Barreras brought their motion to dismiss under section 2-619 of the Code. Such a motion admits the legal sufficiency of the complaint but asserts an affirmative matter that defeats the claim. *U.S. Bank & Trust National Ass'n v. Lopez*, 2018 IL App (2d) 160967, ¶ 17.   "An 'affirmative matter' in this instance is something in the nature of a defense that negates the cause of action *completely* or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." (Emphasis added.) *Anderson v. Chicago Transit Authority*, 2019 IL App (1st) 181564, ¶ 21. A reviewing court should uphold a circuit court's grant of a section 2-619 motion that raises an affirmative matter when (1) there existed no genuine issue of material fact, and (2) the moving party was entitled to judgment as a matter of law. *Lopez*, 2018 IL App (2d) 160967, ¶ 17. The propriety of a dismissal under section 2-619 of the Code is an issue of law and subject to review *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43.

¶ 16    The affirmative matter the Barreras asserted here was the single refiling rule. The single refiling rule is the product of our courts' interpretation of section 13-217 of the Code. That section, in relevant part, provides that, when an action "is voluntarily dismissed by the plaintiff, or *** is dismissed for want of prosecution, *** the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13-217 (West 1994). The supreme court, in *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254 (1991), interpreted section 13-217 to

permit "one, and only one, refiling of a claim." See also *Cobo*, 2018 IL 123038, ¶ 17 (endorsing that interpretation). In the context of mortgage law, a refiling by a predecessor in interest is counted as a refiling by the current plaintiff. *Id.* ¶ 10.

¶ 17    When we decide whether the single refiling rule applies to bar a suit, we use the "transactional test" derived from *res judicata* cases. Under *res judicata* principles, a later suit cannot be barred unless it asserts the same cause of action as an earlier suit; the transactional test is used to determine whether an identity exists between causes of action. *Cobo*, 2018 IL 123038, ¶ 18. Illinois courts apply the transactional test to the single refiling rule "because it is a convenient test with an established body of case law for determining when two causes of action are the same." *Cobo*, 2018 IL 123038, ¶ 28. However, although courts have borrowed the transactional test from the law of *res judicata*, "[t]he single refiling rule is not simply another name for *res judicata*." *Cobo*, 2018 IL 123038, ¶ 28. Notably, the single-refiling rule, unlike *res judicata*, does not require a final adjudication on the merits in the prior lawsuit. *Cobo*, 2018 IL 123038, ¶ 28. Under the transactional test, "separate claims [should be treated] as the same cause of action 'if they arise from a single group of operative facts.' " *Cobo*, 2018 IL 123038, ¶ 19 (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998)). "Courts should approach this inquiry ' "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." ' " *Cobo*, 2018 IL 123038, ¶ 19 (quoting *River Park*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments § 24(2), at 196 (1982)).

¶ 18    In *Cobo*, our supreme court applied the transactional test to conclude that "a lender may not assert a claim under the mortgage and the note concurrently by seeking foreclosure and a

deficiency judgment [under the note] and then assert a claim under the note consecutively twice more." *Cobo*, 2018 IL 123038, ¶ 37. The Barreras imply that, by the same reasoning, a lender cannot more than twice seek a foreclosure under a single mortgage instrument. But Wilmington, in an argument based upon the principle set out in *res judicata* cases such as *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216 (1997), contends that this rule of one instrument, two filings, is inapplicable where there has been a new default. We agree.

¶ 19   Under *res judicata* principles, "a defendant's continuing course of conduct, even if related to conduct complained of in an earlier action, creates a separate cause of action." *D'Last*, 288 Ill. App. 3d at 222. Put another way, one course of conduct may give rise to a second cause of action when that conduct persists after the original judgment. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327-28 (1955). Thus, an earlier judgment relating to a course of conduct "does not bar claims for continuing conduct complained of in the second lawsuit that occur[s] after judgment has been entered in the first lawsuit." *D'Last*, 288 Ill. App. 3d at 222. The application of this principle relevant here is that *res judicata* does not bar suits for defaults on installment payments whose due dates occur after the filings of the prior complaints. Thus, as a rule, "where a money obligation is payable in installments, a separate cause of action arises on each installment." *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991). The "party entitled to payments may bring separate actions on each installment as it becomes due or wait until several installments are due and then sue for all such installments in one cause of action." *Charlestowne Group*, 221 Ill. App. 3d at 46; see also *Thread & Gage Co. v. Kucinski*, 116 Ill. App. 3d 178, 184 (1983). We will call this rule in its application to contracts the "new-default rule."

¶ 20   The new-default rule prevents unreasonable results. If a contract requires performance over multiple years, disputes may lead to multiple claims for defaults. Suppose a contract runs for 20

years. A particular dispute about satisfactory performance occurs at 5 years into the contract and recurs 10 ten years into the contract, with the plaintiff receiving damages each time. If the same dispute recurs again at year 15, it would be illogical and unjust to say that the defendant was immunized from the suit by the two prior suits or that the plaintiff should have sought compensation for the later default in an earlier suit. In this situation, the new-default rule produces a just result, as a continuing pattern of defaults should not immunize a party from suit.

¶ 21    The new-default rule is a specific instance of the transactional test. Potential future defaults cannot pragmatically be treated as part of the same group of operative facts as actual defaults. Potential future defaults—defaults that may occur after a final judgment—rarely, if ever, form a convenient trial unit with known actual defaults; such defaults typically are indefinite and hypothetical, so they thus are generally not justiciable. "[A] 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002). A default that has not yet occurred is a paradigmatic hypothetical issue; further, it is not definite and concrete. Thus, a default that has not occurred typically cannot be litigated. See *Belleville Toyota*, 199 Ill. 2d at 334 (the existence of a justiciable matter is a prerequisite for courts' jurisdiction). The new-default rule is thus necessary to provide remedies for recurring types of defaults.

¶ 22    Although the Barreras' brief does not address the new-default rule as such, their arguments imply that the new-default rule is inconsistent with the holding in *Cobo*. Further, in response to a question at oral argument, they contended that, under sections 15-1504(d) and (e) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1504(d), (e) (West 2018)), no new mortgage or tax default is possible once a plaintiff has filed a mortgage foreclosure complaint. They suggest that

the "deemed and construed" clauses of those sections have the effect of requiring a plaintiff to account for all potential real estate tax and insurance defaults at the time of judgment. We disagree on both points.

¶ 23    Contrary to what the Barreras suggest, sections 15-1504(d) and (e) do not turn any request for attorney fees, costs, and expenses into a demand for an accounting for all possible future insurance and tax defaults. Section 15-1504(d)(4) through (d)(6) provides in relevant part:

"A statement in the complaint that plaintiff seeks the inclusion of attorneys' fees and of costs and expenses shall be deemed and construed to include allegations that:

* * *

(4) in order to protect the lien of the mortgage, it may become necessary for plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate;

(5) in order to protect and preserve the mortgaged real estate, it may also become necessary for the plaintiff to pay liability (protecting mortgagor and mortgagee), fire and other hazard insurance premiums on the mortgaged real estate ***; and

(6) under the terms of the mortgage, any money so paid or expended will become an additional indebtedness secured by the mortgage and will bear interest from the date such monies are advanced at the rate provided in the mortgage, or, if no rate is provided, at the statutory judgment rate." 735 ILCS 5/15-1504(d)(4)-(d)(6) (West 2018).

Section 15-1504(e)(1) through (e)(3) provides in relevant part:

"The request for foreclosure is deemed and construed to mean that the plaintiff requests that:

(1) an accounting may be taken under the direction of the court of the amounts due and owing to the plaintiff;

(2) the defendants be ordered to pay to the plaintiff *** whatever sums may appear to be due upon the taking of such account ***;

(3) in default of such payment in accordance with the judgment, the mortgaged real estate be sold as directed by the court, to satisfy the amount due to the plaintiff as set forth in the judgment ***[.]" 735 ILCS 5/15-1504(e)(1)-(e)(3) (West 2018).

In particular, section 15-1504(d)(6) (735 ILCS 5/15-1504(d)(6) (West 2018)) provides that money that the plaintiff has "paid or expended" for taxes or insurance "will become an additional indebtedness secured by the mortgage," and section 15-1504(e)(1) (735 ILCS 5/15-1504(e)(1) (West 2018)) provides for an accounting of "amounts due and owing." Nothing in either of these sections suggests that a plaintiff can seek compensation for tax or insurance payments that it has not made—as we phrased earlier, there is no tax or insurance analog for accelerating a promissory note.

¶ 24 The supreme court's holding in *Cobo* does not bar Wilmington's claims. The Barreras contend that "a 'key component' and critical inquiry [in *Cobo* was] whether there was a prior lawsuit that sought to adjudicate rights under the instrument at issue." They appear to read *Cobo* to imply that a contract—such as a note or a mortgage—equates to a transaction. That is an interpretation under which the single refiling rule would prevent more than two suits based on any

- 12 -

one contract. That interpretation would make *Cobo* inconsistent with the new-default rule. However, we deem that interpretation to be a misreading of *Cobo*.

¶ 25 *Cobo* addressed whether a 2015 suit for the breach of a promissory note associated with a mortgage was, for purposes of the single refiling rule, the third suit on that note when the plaintiff or its predecessor in interest had dismissed both a 2011 foreclosure suit seeking a deficiency judgment under the note and a 2013 suit for breach of the note. *Cobo*, 2018 IL 123038, ¶¶ 6-9, 13. In *Cobo*, the court noted that a foreclosure suit seeking a personal deficiency judgment is a suit on both the mortgage and the associated promissory note. *Cobo*, 2018 IL 123038, ¶¶ 21-25. It therefore held that the second suit for breach of the note was an impermissible second refiling:

"Both breach of promissory note complaints alleged the same default date, July 1, 2011, as the foreclosure complaint. All three complaints alleged that [the defendants] were personally liable for the same $214,079.06 principal. Most importantly, in the foreclosure complaint from 2011, [the plaintiff's] predecessor expressly sought a deficiency judgment under the note. *** For practical purposes, the request for a deficiency judgment asserted a second claim, this one under the note. [The plaintiff] later sought a remedy under that same note, alleging the exact same default date, in 2013 and again in 2015. The 2015 suit was an impermissible third refiling." *Cobo*, 2018 IL 123038, ¶ 20.

This holding is consistent with the new-default rule; the supreme court's decision in *Cobo* makes clear that each suit was based on the *same* default.

¶ 26 The Barreras would read the transactional test in *Cobo* in a way that disregards a timeline that the new-default rule recognizes. In dismissing Wilmington's complaint, the circuit court ruled that "this fourth lawsuit arises from the same single group of operative facts" in that "the prior three lawsuits were seeking to adjudicate the parties' rights under the same mortgage and note."

The Barreras would have us derive from *Cobo* a standard under which suits "seeking to adjudicate the parties' rights under the same mortgage and note" necessarily arise from the same "group of operative facts."

¶ 27    The Barreras have misapprehended language that the *Cobo* court used in discussing relevant precedent. The *Cobo* court analyzed three appellate court decisions addressing whether particular suits based on mortgage loans were barred by *res judicata*: *LSREF2 Nova Investments III, LLC v. Coleman*, 2015 IL App (1st) 140184, *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237 (2004), and *Turczak v. First American Bank*, 2013 IL App (1st) 121964.

¶ 28    In *Turczak*, while a foreclosure of the first mortgage on a property was in progress, the second-mortgage lender sued the borrower, asserting a default on the promissory note secured by that mortgage. *Turczak*, 2013 IL App (1st) 121964, ¶ 6. The second mortgage lender obtained a default judgment against the borrowers and recorded a memorandum of judgment. *Turczak*, 2013 IL App (1st) 121964, ¶ 6. When the borrowers attempted to arrange a "short sale" of the property, the second mortgage lender demanded a payment to release its lien. *Turczak*, 2013 IL App (1st) 121964, ¶ 8. The borrowers later sued the second mortgage lender, asserting that the lender "engaged in false or misleading conduct by maintaining that [it] had an enforceable second mortgage after obtaining the judgment on [the] promissory note." *Turczak*, 2013 IL App (1st) 121964, ¶ 9. They argued that, once the lender obtained its final judgment on the promissory note, *res judicata* barred any attempt to enforce the second mortgage. *Turczak*, 2013 IL App (1st) 121964, ¶ 21. The trial court dismissed the complaint for failure to state a claim, and the appellate court affirmed. *Turczak*, 2013 IL App (1st) 121964, ¶¶ 11, 37. According to the description of the case by the *Cobo* court:

"[The *Turczak* court] found that the [second mortgage lender's] mortgage had remained enforceable despite the prior default judgment [on the note]. [Citation.] The court explained that a lender may sue under the mortgage and the note consecutively or concurrently. [Citation.] *Because the* [*lender*] *had sought only a default judgment* [*on the note*] *in its earlier lawsuit, no prior action adjudicated the parties' rights under the mortgage, and that mortgage remained enforceable.*" (Emphasis added.) *Cobo*, 2018 IL 123038, ¶ 34.

The *Cobo* court concluded that *Turczak* was distinguishable from the matter before it: "The key component that was missing in *Turczak*—a prior lawsuit seeking to adjudicate the parties' rights under the disputed instrument—is present in this case." *Cobo*, 2018 IL 123038, ¶ 35. "In *Turczak* the [lender] had sought only a default judgment [on the note] in the earlier litigation" but "*did not seek to foreclose on the mortgage, so the mortgage remained enforceable.*" (Emphasis added.) *Cobo*, 2018 IL 123038, ¶ 35. By contrast, in *Cobo*, the lender "sought remedies under both the mortgage and the note," so that the note on which it sued was no longer enforceable. *Cobo*, 2018 IL 123038, ¶ 35.

¶ 29    The Barreras assert that the latter statement in *Cobo* shapes the relevant inquiry:

"While [Wilmington] attempts to shift the inquiry to whether different claimed *defaults* can permit avoidance of the application of [the single refiling rule], the inquiry is broader than whether a plaintiff can comb over its contract to allege a specific additional default that it may have missed in the first few lawsuits; the 'key component' and critical inquiry is whether there was a prior lawsuit that sought to adjudicate rights under the instrument at issue." (Emphasis in original.)

¶ 30    The Barreras misread the *Cobo* court's discussion of *Turczak*. They appear to have taken that analysis out of context, with the result that they read *Cobo* to say that the adjudication of a

particular contract or instrument is an all-or-nothing matter. Their brief suggests that they read *Cobo* to imply that one suit on a note that goes to judgment "uses up" that note for *res judicata* purposes and dismissals of two suits on a note "use up" that note under the single refiling rule. But that mistakes the court's summary of *Turczak* for the part of its holding concerning the application of the transactional test. As we have discussed, in *Cobo*, the court explained the transactional test in detail earlier in its opinion, describing it as a pragmatic inquiry that weighs the relationship of the relevant facts and other considerations. *Cobo*, 2018 IL 123038, ¶ 19. The *Cobo* court's descriptions of the rule's application in its analyses of other cases are necessarily condensed. We would certainly not take the *Cobo* decision to suggest, for instance, that if a lender sues on a note twice, both times seeking only the arrearage, further suits on the note are barred. We thus reject the Barreras' reading of *Cobo* and conclude that the holding in *Cobo* is consistent with the new-default rule.

¶ 31    With these principles established, we can address the specifics of this case. First, we conclude that existing tax and insurance defaults are part of the core of operative facts of a foreclosure complaint. They relate in time, space, and origin to the other payment defaults alleged in an ordinary foreclosure case. They are part of a convenient trial unit with those defaults, and their treatment as a unit conforms to standard business practices and parties' expectations. See *Cobo*, 2018 IL 123038, ¶ 19 (setting out factors for when complaints share a core of operative facts).

¶ 32    We note that Wilmington's current complaint specifies no date of default; the court denied it leave to file an amended complaint specifying such dates. We proceed to determine the periods of default for which Wilmington may seek relief consistent with the single refiling rule.[2]

¶ 33    We first determine that Wells Fargo's second foreclosure complaint was the second opportunity to litigate the portions of the tax and mortgage defaults that existed as of the filing of the first complaint on June 19, 2012. Therefore, the single refiling rule now bars any portions of the alleged defaults that Wells Fargo could have raised in the first complaint.

¶ 34    Second, the portions of the alleged tax and insurance defaults postdating the dismissal of the first complaint but predating the filing of the second complaint are not barred. Those portions of the defaults either were raised in the second foreclosure complaint or, as existing mortgage-based claims, were part of that complaint's core of operative facts. However, they were not part of the core of operative facts of the third complaint: that complaint was based on the note alone, and the tax and insurance requirements were part of the mortgage, not the note. The single refiling rule does not affect the ability of lenders to pursue claims under mortgages and notes in separate actions. *Cobo*, 2018 IL 123038, ¶ 37. Thus, the current complaint is the first refiling to include portions of the alleged defaults postdating the dismissal of the first complaint but predating the filing of the second complaint.

¶ 35    Finally, the portions of the alleged defaults occurring after the filing of the second complaint are new and thus also are not barred.

_____

[2] We here address only the tax and insurance defaults, as those were the only defaults for which Wilmington sought compensation in the instant suit.

¶ 36    Although the Barreras' section 2-619 motion stated a defense as to the portions of defaults that occurred before the filing of the first complaint, it did not raise a defense to the complaint as a whole or to the entirety of any specific claim. Thus, it was error to dismiss the complaint. See *Anderson*, 2019 IL App (1st) 181564, ¶ 21 (a section 2-619 "affirmative matter" must either negate the cause of action *completely* or refute crucial conclusions of law or material fact).

¶ 37                                          III. CONCLUSION

¶ 38    For the reasons stated, we reverse the dismissal of Wilmington's complaint, and we remand the cause.

¶ 39    Reversed and remanded.

---

**No. 2-19-0883**

---

| | |
|---|---|
| **Cite as:** | *Wilmington Savings Fund Society, FSB v. Barrera*, 2020 IL App (2d) 190883 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 18-CH-1362; the Hon. Patricia L. Cornell, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas J. Cassady, of Dimonte & Lizak, LLC, of Park Ridge, for appellant. |
| **Attorneys for Appellee:** | Robert J. Magee and James T. Magee, of Magee Hartman, P.C., of Round Lake, for appellees. |