2024 IL App (3d) 230020

Opinion filed November 12, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| MARGARET RODRIGUEZ; MIDLAND | ) | |
| FUNDING, LLC; BANK OF AMERICA, N.A.; | ) | Appellate Court No. 3-23-0020 |
| THE STATE OF ILLINOIS; and UNKNOWN | ) | Circuit No. 19-CH-954 |
| OWNERS AND NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Margaret Rodriguez, | ) | Honorable |
| | ) | Joseph T. Bugos, |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices Holdridge and Peterson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Plaintiff, Wells Fargo Bank, N.A. (Wells Fargo), filed a foreclosure complaint against

defendant, Margaret Rodriguez (Margaret), seeking to foreclose on her home that was secured by

a Wells Fargo mortgage. Defendant moved to dismiss the complaint, and the circuit court granted

the motion on the ground that plaintiff's cause of action violated section 13-217 of the Code of

Civil Procedure (Code) (735 ILCS 5/13-217 (West 1994)),[1] also known as the "single refiling rule." Plaintiff appeals, and we affirm.

I. BACKGROUND

In 2009, Dolores and Margaret Rodriguez purchased a home in Downers Grove after obtaining a loan for $364,828 that was secured by a mortgage on the property. The loan required the Rodriguezes to repay the principal and interest through monthly installments of $1958.48.

In July 2011, Wells Fargo acquired the mortgage, and the Rodriguezes defaulted on the loan three months later. At the time of default, the remaining principal balance of the loan was $358,051.01. On October 4, 2011, Wells Fargo executed a loan modification agreement that extended the loan's maturity date and reduced the loan's interest rate from 6% to 4.375%. The agreement added the unpaid interest and escrow amount that accrued during default, resulting in a modified unpaid principal balance of $384,413.69.

On May 1, 2012, the Rodriguezes once again defaulted on the loan. Wells Fargo sent a default notice to the Rodriguezes on June 15, 2012 (default notice). In the notice, Wells Fargo stated that to correct the default the Rodriguezes needed to pay $5498.25, the total delinquency amount as of June 15, 2012, and encouraged them to bring the loan current by July 19, 2012, to avoid acceleration. The notice provided:

> "If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership of the property by a foreclosure proceeding, which could result in [Wells Fargo]

---

[1]Public Act 89-7, which amended section 13-217 in March 1995 (Pub. Act 89-7 (eff. Mar. 9, 1995)), was held to be unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Thus, the version of section 13-217 that is currently effective is the version that was in effect prior to that amendment. See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1 (2008).

or another person acquiring ownership of the property. If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required. However, any future negotiations attempting to reinstate your loan or any payment of less than the full amount shall not require [Wells Fargo's] waiver of the acceleration unless otherwise agreed to, in writing, by [Wells Fargo]."

The Rodriguezes did not make a payment to cure the default.

¶ 6 On September 14, 2012, Wells Fargo mailed the Rodriguezes a notice of default and acceleration (acceleration notice), stating that due to their default the entire balance on the loan was "due and payable." The Rodriguezes did not respond to the acceleration notice.

¶ 7 On October 4, 2012, Wells Fargo filed a foreclosure complaint (Wells Fargo Bank, N.A. v. Rodriguez, No. 12-CH-004988 (Cir. Ct. Du Page County) (Case 1)). In the complaint, Wells Fargo alleged that the amount of original indebtedness was $364,828. The complaint further alleged that the Rodriguezes defaulted by failing to make monthly payments "for May 2012 through the present" and that the principal balance due on the note and mortgage was $381,276.23, plus interest, costs, and fees.

¶ 8 The Rodriguezes applied for loss mitigation with Wells Fargo, and in June 2013, Wells Fargo offered them a trial period plan under the federal Home Affordable Modification Program (HAMP). The trial plan required the Rodriguezes to make three equal payments of $2173.32, due

3

in consecutive monthly installments. After making all three payments, the Rodriguezes declined the HAMP loan modification.

¶ 9    On October 13, 2016, Wells Fargo filed an amended complaint in Case 1. The amended complaint alleged original indebtedness of $364,828 and modified indebtedness of $384,413.69. It further alleged that the Rodriguezes were in default by failing to make monthly payments "for May 2012 through the present" and that the principal balance due "on the note and mortgage and modification agreement" was $381,276.23, plus interest, costs, and fees. Wells Fargo voluntarily dismissed the amended complaint on August 22, 2017.

¶ 10    In January 2018, Wells Fargo filed a second foreclosure complaint (Wells Fargo Bank, N.A. v. Rodriguez, No. 18-CH-000071 (Cir. Ct. Du Page County) (Case 2)). The complaint alleged original indebtedness of $364,828 and modified indebtedness of $358,051.01, which Wells Fargo calculated based on the original indebtedness minus the HAMP qualifying payment the Rodriguezes tendered in 2013. The complaint further alleged that the Rodriguezes were in default by failing to make monthly payments "for December 2012 through the present" and that the principal balance due on "the note and the mortgage and modification agreement" was $377,530.71, plus interest, costs and fees, and advances. Margaret moved to dismiss Case 2, and the circuit court granted her motion, dismissing the complaint with prejudice on April 9, 2019. Wells Fargo did not move to reconsider or appeal the involuntarily dismissal order.

¶ 11    On August 16, 2019, Wells Fargo filed a third foreclosure complaint against Margaret (Wells Fargo Bank, N.A. v. Rodriguez, No. 19-CH-000954 (Cir. Ct. Du Page County) (Case 3)).[2] In its third complaint, Wells Fargo alleged original indebtedness of $364,828, a default date of

---

[2]Margaret is the only property owner listed in the third foreclosure complaint.

4

"April 1, 2019, through the present," and a remaining outstanding principal balance due on the note of $330,085.81, plus interest, fees, and costs.

¶ 12    Margaret moved to dismiss Case 3 pursuant to section 2-619 of the Code, arguing that the case should be dismissed because it violated the "single refiling rule" under section 13-217 of the Code. She maintained that, applying the rule, Case 3 was an impermissible second refiling of Case 1. In an affidavit attached to her motion, Margaret averred that (1) she received a default notice from Wells Fargo dated June 15, 2012; (2) she did not make a payment pursuant to the terms of the June 15, 2012, letter; and (3) subsequent to October 4, 2012, the filing date of Case 1, she did not modify, reinstate, or make a payment on the past due balance on her loan.

¶ 13    At the conclusion of the hearing, the circuit court found that because Wells Fargo accelerated the loan in 2012 before filing Case 1, the total amount due on the loan remained constant across all three actions and the acceleration of the note remained in effect the entire time. The court concluded that Wells Fargo's current action "arose from the same set of operative facts as the [previous] action" and therefore violated the single refiling rule. In reaching its decision, the court relied heavily on the First District case of *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006.

¶ 14                                          II. ANALYSIS

¶ 15    On appeal, Wells Fargo argues that the circuit court erred by dismissing its foreclosure complaint in Case 3 on the basis that it violated the single refiling rule and raises three alternative arguments in support of its claim. First, its claims the voluntary dismissal of Case 1 "deaccelerated" and/or reinstated the loan, creating a new cause of action under the "new-default rule." Second, it argues the court's involuntary dismissal of Case 2 reinstated the loan, negating any prior acceleration and avoiding application of the single refiling rule. Last, it contends the

5

foreclosure complaint filed in Case 3 does not violate the single refiling rule because the operative facts alleged in the complaint—the default date and the outstanding principal balance—are different from those alleged in the first two cases.

¶ 16       Section 2-619(a)(9) of the Code allows involuntary dismissal of a claim that is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). An "[a]ffirmative matter is something in the nature of a defense that negates the cause of action completely." (Internal quotation marks omitted.) *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 10.

¶ 17       Under section 2-619(a)(9), a moving party must assert a defense that is "apparent on the face of the complaint" or "supported by affidavits or certain other evidentiary materials." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003). Once the defendant satisfies its burden, the plaintiff is required to show that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Id.* Facts asserted in a section 2-619 affidavit are deemed admitted unless the plaintiff submits a counter-affidavit refuting those facts. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). We review a circuit court's dismissal of an action under section 2-619(a)(9) *de novo*. *Watkins*, 2012 IL App (1st) 100632, ¶ 10.

¶ 18                              A. Single Refiling Rule

¶ 19       Here, Margaret asserted the single refiling rule as the affirmative matter defeating Wells Fargo's claim. The single refiling rule is derived from section 13-217 of the Code, which states, that if "the action is voluntarily dismissed by the plaintiff, *** the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13-217 (West 1994). Our supreme court has interpreted section 13-217 as

6

"expressly permit[ting] one, and only one, refiling of a claim even if the statute of limitations has not expired." *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254 (1991).

¶ 20    "Whether two complaints state the same claim does not depend on how the plaintiff labels the complaint." *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 18. Instead, to determine whether two lawsuits assert the same cause of action for purposes of the single refiling rule, we apply the transactional test used in *res judicata* cases. *Id.* The transactional test treats separate claims as asserting the same cause of action "if they arise from a single group of operative facts." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Courts should approach the single-group-of-operative-facts inquiry " 'pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id.* at 312 (quoting Restatement (Second) of Judgments § 24, at 196 (1982)).

¶ 21    In this case, each of the three foreclosure complaints arise from the same operative facts because they were brought by the same plaintiff, Wells Fargo, alleged the same original indebtedness of $364,828, and asserted default of the same underlying note, mortgage, and modified loan agreement. Additionally, Margaret asserted in her uncontested affidavit that she did not commit multiple defaults that could form the basis of different causes of action because, after her initial default in July 2012, Wells Fargo accelerated the note under the terms of the modified loan agreement. Thus, contrary to Wells Fargo's assertion, the single refiling rule applies and requires dismissal of its third foreclosure complaint.

¶ 22    Wells Fargo nevertheless claims that Case 3 was not an impermissible second refiling of Case 1 because under transactional test and *res judicata* principles, a separate cause of action arose

7

each time Margaret failed to make a monthly installment payment. As such, Wells Fargo argues that *res judicata* does not bar suits for defaults on installments payments whose due dates occur after the filings of the prior complaints and cites *Wilmington Savings Fund Society, FSB v. Barrera*, 2020 IL App (2d) 190883, in support of its argument.

¶ 23    "The general rule is that where a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment as it becomes due." *Thread & Gage Co. v. Kucinski*, 116 Ill. App. 3d 178, 184 (1983); see *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991). In *Barrera*, the Second District relied on this general proposition and announced the "new-default rule." *Barrera*, 2020 IL App (2d) 190883, ¶ 19. The new-default rule allows a party entitled to installment payments under a contract to bring a separate action on each installment as each one becomes due or wait until several installments are due. *Id.* In *Barrera*, after three prior foreclosure complaints in which the bank accelerated the note, the bank filed a fourth complaint, alleging that the borrowers defaulted by failing to pay property taxes and insurance. *Id.* ¶ 6. The circuit court dismissed the fourth complaint based on the single refiling rule. *Id.* ¶ 8.

¶ 24    On appeal, the court applied the transactional test and held that the single refiling rule was not a complete defense to the bank's fourth foreclosure complaint because, as alleged, the borrowers "failures to pay taxes and insurance are new defaults." (Emphasis omitted.) *Id.* ¶ 14. The court reasoned that this new-default rule was a "specific instance of the transactional test" and was necessary to provide remedies for contracts that require performance over a number of years. *Id.* ¶¶ 19-21. Thus, the court concluded that the borrowers' new defaults were not part of the core set of operative facts that formed the basis of the prior complaints. *Barrera* explained that the new-

8

default rule prevents unreasonable and unjust results because a "continuing pattern of *defaults* should not immunize a party from suit." (Emphasis added.) *Id.* ¶ 20.

¶ 25 The court in *Bank of New York Mellon v. Dubrovay*, 2021 IL App (2d) 190540, ¶¶ 29-30, relied on the reasoning in *Barrera* and extended its holding by concluding that the voluntary dismissal of three prior foreclosure complaints deaccelerated the debt, which reinstated the note and the mortgage in that case. Consequently, the *Dubrovay* court concluded that the bank's fourth foreclosure complaint alleged a new default and was not barred by the single refiling rule. *Id.* In *Dubrovay*, after three prior foreclosure complaints in which the bank accelerated the loan (all three of which the bank voluntarily dismissed), the bank filed a fourth complaint alleging the same principal balance as alleged in the complaints but asserted a later default date than previously pled. *Id.* ¶¶ 5-11. The borrower did not receive a notice of acceleration separate from the foreclosure complaints. The complaints themselves simply indicated that the borrower " 'failed to make payments when due and the subject loan has been accelerated.' " *Id.* ¶¶ 5, 11. In reversing the circuit court's dismissal, the appellate court reasoned that the effect of the bank's voluntary dismissal of the three previous foreclosure actions was to render the foreclosure proceedings a nullity and to leave the parties in the same position as if the cases had never been filed. *Id.* ¶ 30. The court concluded that nullification of the prior foreclosures resulted in nullification of the acceleration, which essentially reinstated the borrower's obligation to make monthly installment payments on the note. *Id.*

¶ 26 There is a different rule, however, when a bank accelerates the note separate and apart from the foreclosure proceedings. In a contract with an acceleration clause, a breach constitutes a breach of the entire contract. See *Kucinski*, 116 Ill. App. 3d at 184-85; see *Acceleration Clause*, Black's

9

Law Dictionary (10th ed. 2014) (defining an acceleration clause as "[a] provision in a mortgage *** which allows a lender the opportunity to call monies due under the instrument").

"[W]here the acceleration provision of the contract provides that payment of the entire debt upon default is automatic, or where the acceleration provision is optional and the creditor unequivocally exercises the option ***[,] it is sometimes held in those instances that the statute of limitations begins to run immediately upon default." *Kucinski*, 116 Ill. App. 3d at 184-85 (citing 18 Samuel Williston, A Treatise on the Law of Contracts § 2027 (3d ed. 1978); 4 Arthur L. Corbin, Corbin on Contracts § 951 (1951)).

"[A] cause of action on a promissory note payable at a definite date accrues on the due date or date stated in the promissory note or the date upon which the promissory note is accelerated." 735 ILCS 5/13-206 (West 2022).

¶ 27    Here, after the Rodriguezes defaulted on the promissory note by failing to make the May 1, 2012, payment, Wells Fargo sent a default notice demanding payment of the total delinquency amount and informed the Rodriguezes that they could cure the default by paying the delinquency amount by July 19, 2012. The default notice further stated that, if the Rodriguezes failed to cure the default by said date, Wells Fargo would accelerate the maturity of the loan and "may begin foreclosure proceedings." It is undisputed that the Rodriguezes did not cure the default or make any subsequent payments. Then, on September 14, 2012, two months after the Rodriguezes failed to cure their default, Wells Fargo sent an acceleration notice informing them that the entire balance on the loan was "due and payable" immediately. In other words, Wells Fargo accelerated the note.

¶ 28    Like the circuit court, we find *Sigler*, 2020 IL App (1st) 191006, instructive. The relevant facts in that case are nearly identical to those before us. In *Sigler*, the borrowers had a mortgage and note with the bank and defaulted, leaving a principal balance due on the loan of $681,000. The

10

bank sent a default and acceleration notice and then filed the first of three foreclosure complaints. The first complaint alleged default " 'for March 1, 2008, through the present' " and a balance due on the note and mortgage of $681,000, plus interest and fees. *Id.* ¶ 13. It then voluntarily dismissed the complaint. The second foreclosure complaint alleged default " 'for December 1, 2011, through the present' " and asserted a balance due of $681,000, plus interest and fees. *Id*. ¶ 14. The circuit court entered summary judgment in favor of the bank on the single-refiling-rule issue. Three years later, the bank voluntarily dismissed the suit. The third foreclosure complaint alleged that " '[t]he mortgagor has failed to make payments when due and the subject loan has been accelerated.' " *Id.* ¶ 19. The complaint also alleged that the unpaid principal balance was $681,000, plus interest and fees and that the loan was " 'paid through February 1, 2008.' " *Id.* The borrowers argued that all the foreclosure complaints arose from the same operative facts because they were all filed by the same bank, they all sought the same principal amount, and they all alleged a default of the same underlying note and mortgage. The circuit court agreed and granted their 2-619(a)(9) motion to dismiss for violating the single refiling rule. *Id.* ¶ 26.

¶ 29　　　The First District affirmed, holding all three complaints arose out of "the same set of operative facts." *Id.* ¶ 53. The court concluded that the third foreclosure complaint involved the same facts as the first and second complaint. Specifically, the court held: "Once the Siglers defaulted on the note and Deutsche Bank both invoked the acceleration clause and filed a foreclosure action, the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note." *Id.*

¶ 30　　　In this case, Wells Fargo does not deny that it sent a default notice (June 15, 2012, letter) and an acceleration notice (September 14, 2012, letter) to the Rodriguezes but claims that it chose not to accelerate the loan, essentially deaccelerating the loan, when it voluntarily dismissed the

11

first foreclosure complaint. However, here, similar to the facts in *Sigler* and contrary to the facts in *Dubrovay*, Wells Fargo issued an acceleration notice that accelerated the loan; the foreclosure complaint did not, by itself, accelerate the loan. Moreover, Wells Fargo did not expressly revoke the acceleration notice when it voluntarily dismissed the first foreclosure complaint, nor did it otherwise issue a letter or notice to the borrowers reinstating the loan. Wells Fargo's suggestion that the HAMP payments created a new agreement that "deaccelerated" the loan also lacks merit. Although the Rodriguezes made three payments under the trial plan, they ultimately declined the HAMP loan modification, thereby negating a restructured agreement.

¶ 31     In sum, there is no evidence presented by Wells Fargo in opposition to Margaret's motion to dismiss that the loan was reinstated, "deaccelerated," or modified in any way following the Rodriguezes default on May 1, 2012. Further, as the dissent in *Dubrovay* noted, "[t]here is no evidence of a new amortization schedule requiring monthly installments after the dismissal of any of the foreclosure complaints." *Dubrovay*, 2021 IL App (2d) 190540, ¶ 55 (Hutchinson, J., dissenting). Here, likewise, Wells Fargo did not negotiate a new schedule with Margaret. Thus, the accelerated contract was still effective, making the debt indivisible, when Wells Fargo filed the second foreclosure complaint, which was the only refiling permissible under section 13-217.

¶ 32                          B. Involuntary Dismissal of Second Action

¶ 33     Alternatively, Wells Fargo argues that the circuit court's involuntary dismissal of its second action reinstated the loan. We disagree.

¶ 34     In *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 165 (1997), the Illinois Supreme Court stated:

"Under the statute, the reason a cause of action was originally dismissed is important in determining whether a plaintiff can subsequently refile, but after the case has been filed a

12

second time, the reason for the second dismissal is of no consequence at all. No matter why the second dismissal took place, the statute does not give plaintiff the right to refile again. As this court expressly held in *Flesner* [citation], section 13-217 permits one, and only one, refiling of a claim."

Applying the rule emphasized in *Timberlake*, we find the reason for the dismissal of Case 2 is immaterial. Wells Fargo's third foreclosure complaint was the second refiling of its claim and was impermissible under section 13-217 of the Code.

¶ 35                    C. Different Operative Facts

¶ 36        We also reject Wells Fargo's third alternative argument that each of the foreclosure complaints alleged different default dates and therefore alleged different operating facts. The *relevant* set of operative facts in all three complaints are the same—there was one default on the modified loan, followed by a failure to cure that default, and a subsequent acceleration of the modified note. "Allowing [the bank] to circumvent the single-refiling rule simply by changing the date from which it sought accrued interest would mean that [the bank's] claims would never be barred by any prior adjudication because interest kept accruing as time passed following the initial default." *Sigler*, 2020 IL App (1st) 191006, ¶ 57; see *U.S. Bank National Ass'n v. Gullotta*, 120 Ohio St. 3d 399, 2008-Ohio-6268, 899 N.E.2d 987, ¶ 32 (rejecting the bank's argument that every missed payment is a new cause of action when a borrower fails to cure the breach because it "would render the two-dismissal rule meaningless in the context of foreclosure actions because every successive attempt to foreclose a mortgage could be construed as a new claim" (internal quotation marks omitted)).

¶ 37        The key here is that Wells Fargo's third foreclosure complaint makes no allegation of Margaret's failure to pay an ongoing obligation under the mortgage or the note after its election to

13

accelerate the debt following the original default. The third complaint arises from the same single group of operative facts as the prior two lawsuits and seeks to adjudicate the parties' rights under the same mortgage, note, and modified loan agreement. Therefore, we must apply section 13-217 as written and decline the invitation to expand the single refiling rule to cover multiple foreclosure complaints.

¶ 38                                    III. CONCLUSION

¶ 39          The judgment of the circuit court of Du Page County is affirmed.

¶ 40          Affirmed.

*Wells Fargo Bank, N.A. v. Rodriguez*, 2024 IL App (3d) 230020

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-CH-954; the Hon. Joseph T. Bugos, Judge, presiding. |
| **Attorneys for Appellant:** | Michael A. Scodro, Lucia Nale, Michael H. Bornhorst, Lucy Holifield, and Clare E. Myers, of Mayer Brown LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel Khwaja, of Chicago, for appellee. |