2021 IL App (2d) 190540
Nos. 2-19-0540 & 2-19-0545 cons.
Opinion filed November 17, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON, f/k/a The Bank Of New York as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2007-3T1, Mortgage Pass-Through Certificates, Series 2007-3T1, | ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Nos. 12-CH-4068 |
| | ) | 17-CH-1394 |
| JAESON DUBROVAY; JAMIE DUBROVAY; FLAGG CREEK WATER RECLAMATION DISTRICT; MULYK LAHO LAW, LLC, f/k/a Mulyk, Laho & Mace, LLC; UNKNOWN HEIRS AND LEGATEES OF JAESON DUBROVAY, IF ANY; UNKNOWN HEIRS AND LEGATEES OF JAMIE DUBROVAY, IF ANY; UNKNOWN OWNERS, and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| | ) ) ) | Honorable James D. Orel, |
| (Jamie Dubrovay, Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justice Zenoff concurred in the judgment and opinion.
Justice Hutchinson dissented, with opinion.

**OPINION**

¶ 1    Plaintiff, Bank of New York Mellon (BONY), appeals from an order of the trial court that granted a motion by defendant Jamie Dubrovay to dismiss BONY's fourth foreclosure complaint for violating section 13-217 of the Code of Civil Procedure (Code) (735 ILCS 5/13-217 (West 2018)), also known as the single refiling rule. BONY also appeals the trial court's denial of its motion to reconsider the dismissal of the foreclosure complaint. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.

¶ 2                                  I. BACKGROUND

¶ 3    On January 22, 2007, Jamie Dubrovay and defendant Jaeson Dubrovay (the Dubrovays) secured a loan with Countrywide Home Loans for $780,000. The loan was secured with a mortgage and a note to property located at 38 South Madison Street in Hinsdale. The loan was subsequently assigned to BONY. The note required monthly, interest-only payments for the first 120 months, followed by monthly principal and interest payments until the loan matured on February 1, 2037. Payment was due on the first day of each month. The note contained the following provisions:

> "(B) Default
>
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> (C) Notice of Default
>
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time."

The note was secured by a mortgage that provided in part:

"19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. *** Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. ***

* * *

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument ***. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceedings and sale of the property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date

specified in the notice, Lender at its option may require immediate payment without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

¶ 4                                    A. The First Case

¶ 5      On March 8, 2011, BONY filed a foreclosure complaint (11-CH-1218) (2011 foreclosure complaint) against the Dubrovays, alleging:

"Statement as to default and amounts now due:

The mortgagor has failed to make payments when due and the subject loan has been accelerated. The current unpaid principal balance is $774,228.25, plus accrued interest, court costs, title costs and plaintiff's attorney fees. The *per diem* rate of interest on this loan is $139.79. the subject loan is paid through October 1, 2010."

BONY sought, *inter alia*, "any additional taxes paid, or advances paid for insurance." On June 7, 2012, the trial court issued a dismissal order after BONY sought to voluntarily dismiss the foreclosure proceedings. The order stated that the cause was "dismissed with leave to reinstate."

¶ 6                                    B. The Second Case

¶ 7      On August 10, 2012, BONY filed another foreclosure complaint (12-CH-4068) (2012 foreclosure complaint) against the Dubrovays, alleging the same "statement as to default and amounts now due." BONY sought, *inter alia*, "any additional taxes paid, or advances paid for insurance." On August 12, 2013, the trial court issued another dismissal order following BONY's motion to voluntarily dismiss, stating that the cause was "dismissed without prejudice and with leave to reinstate."

¶ 8                               C. The Third Case

¶ 9      On March 9, 2016, BONY filed another foreclosure complaint (16-CH-366) (2016 foreclosure complaint) against the Dubrovays, alleging:

> "Statements as to defaults: Default was made in the payment of installments of principal and interest falling due under the terms of the Note; said default occurring on November 1, 2010, and there remains due and owing on the Note as of February 27, 2016:
>
> Principal: $774,228.25
>
> Per Diem Interest: $137.88"

BONY did not seek additional taxes paid or advances paid for insurance. On December 6, 2016, BONY's motion to voluntarily dismiss the foreclosure complaint was granted by the trial court "without prejudice."

¶ 10                              D. The Fourth Case

¶ 11     On October 10, 2017, BONY filed yet another foreclosure complaint (17-CH-1394) (2017 foreclosure complaint) against the Dubrovays, alleging:

> "Statement as to defaults and amount now due:
>
> The Mortgagor has failed to make payments when due and the subject loan has been accelerated. The current unpaid principal balance is $774,228.25, plus accrued interest, court costs, title costs and plaintiff's attorney fees. The *per diem* rate of interest on this loan is $137.88. The subject loan is paid through April 1, 2013."

BONY sought, *inter alia*, "any additional taxes paid, or advances paid for insurance."

¶ 12     On September 13, 2018, Jamie filed a motion to dismiss BONY's foreclosure complaint, pursuant to section 2-619 of the Code. See 735 ILCS 5/2-619 (West 2018). Her motion argued that the 2017 foreclosure complaint was barred by section 13-217 of the Code (the single refiling rule)

and principles of *res judicata*. At the conclusion of Jamie's motion, she argued that plaintiff's complaint must be dismissed with prejudice. The motion to dismiss attached Jaime's affidavit, which she stated that she and Jaeson filed for divorce in 2015 and that he permanently stopped residing at the property in June 2016. Jamie also stated that neither she nor her "ex-husband Jaeson" made payments to plaintiff after they defaulted in October 2010. Additionally, Jamie stated that she did not execute a loan modification or enter into a forbearance agreement with plaintiff following the default. Jamie stated that neither she nor Jaeson made any payments to plaintiff or a loan servicer between October 2010 and April 2013.

¶ 13    BONY responded to Jamie's motion on January 7, 2019, arguing that the April 1, 2013, default date alleged in the 2017 foreclosure complaint was not the same as claimed in the prior three foreclosure complaints and, therefore, was not in violation of the single refiling rule. BONY attached the January 4, 2019, affidavit of the litigation manager of its serving representative, Bayview Loan Servicing LLC (Bayview), attesting that the loan was in default when Bayview began servicing the loan on May 16, 2013, and that the loan was still in default on January 4, 2019, as Bayview had not received any payment since it began servicing the loan and had advanced real estate taxes and insurance premiums on the property.

¶ 14    The trial court held a hearing on Jamie's motion to dismiss on February 8, 2019. In granting Jamie's motion, the trial court cited *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, as controlling.

¶ 15    On March 7, 2019, BONY filed a motion to reconsider the order dismissing the 2017 foreclosure complaint. Also, on March 7, 2019, BONY filed a motion to set aside the dismissal of the 2017 foreclosure complaint and reinstate the 2012 foreclosure complaint. On May 31, 2019,

after a hearing on the motions, the trial court denied BONY's motion to reconsider the dismissal of the 2017 foreclosure complaint and BONY's motion to reinstate the 2012 foreclosure complaint.

¶ 16    On June 25, 2019, BONY filed a timely notice of appeal from the trial court's denial of its motion to set aside the dismissal of the 2017 foreclosure complaint and reinstate the 2012 foreclosure complaint. On June 26, 2019, BONY filed a timely notice of appeal on the trial court's denial of its motion to reconsider the dismissal of the 2017 foreclosure complaint pursuant to section 2-619 of the Code. This court granted BONY's subsequent motion to consolidate the two appeals on October 4, 2019.

¶ 17                                II. ANALYSIS

¶ 18    BONY contends that the trial court erred by dismissing its 2017 foreclosure complaint on the basis that it was in violation of the single refiling rule, because its 2017 complaint was not the same as the prior actions in that it alleged a new default.

¶ 19    Jamie's motion to dismiss BONY's 2017 foreclosure complaint for violating the single refiling rule was brought under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)). Section 2-619 of the Code (*id.* § 2-619) provides a means for a defendant to obtain a summary dismissal of issues of law or easily proved issues of fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). A motion to dismiss filed under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's complaint but raises an affirmative defense or other matter that avoids the legal effect of or defeats the plaintiff's claims. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The affirmative matter "must be apparent on the face of the complaint" or "be supported by affidavits or certain other evidentiary materials." *Id.* at 377.

¶ 20    Once the defendant satisfies its burden, the burden shifts to the plaintiff to establish that the defense is unfounded or requires the resolution of an essential element of material fact before

it is proven. *Id.* Evidentiary facts asserted in a defense affidavit are deemed admitted unless the plaintiff submits a counteraffidavit to refute those facts. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. All pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). "If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed." *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116.

¶ 21    Upon review of a dismissal pursuant to section 2-619, the reviewing court should uphold a trial court's grant of a section 2-619 motion that raises an affirmative matter when (1) there existed no genuine issue of material fact and (2) the moving party was entitled to judgment as a matter of law. *U.S. Bank Trust National Ass'n v. Lopez*, 2018 IL App (2d) 160967, ¶ 17. The propriety of a dismissal under section 2-619 of the Code is an issue of law and subject to *de novo* review. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43.

¶ 22    The affirmative matter Jamie asserted here was the single refiling rule. The single refiling rule is the product of our court's interpretation of section 13-217 of the Code. That section, in relevant part, provides that, when an action "is voluntarily dismissed by the plaintiff, or *** is dismissed for want of prosecution, *** the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is voluntarily dismissed by the plaintiff." 735 ILCS 5/13-217 (West 1994).[1] The purpose of section

---

[1] The currently effective version of section 13-217 is the one codified in the Illinois Compiled Statutes of 1994; that version precedes the amendments to the Code by Public Act 89-7 (eff. Mar. 9, 1995), an act that our supreme court found unconstitutional in its entirety. *E.g.*, *C.*

13-217 is to facilitate the disposition of cases on the merits and to avoid its frustration upon grounds unrelated to the merits. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 44. However, section 13-217 was not intended to permit multiple refilings of the same cause of action. *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 163 (1997). Our supreme court has interpreted section 13-217 of the Code as "expressly permit[ting] one, and only one, refiling of a claim even if the statute of limitations has not expired." *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254 (1991).

¶ 23    To determine whether the single refiling rule applies to bar a suit, we use the "transactional test" derived from *res judicata* cases. *Wilmington Savings Fund Society, FSB v. Barrera*, 2020 IL App (2d) 190883, ¶ 17. The transactional test is used to determine whether an identity exists between causes of action. *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 18. The transactional test treats separate claims as the same cause of action " 'if they arise from a single group of operative facts.' " *Id.* ¶ 19 (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998)). Courts should approach this inquiry " ' "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." ' " *Id.* (quoting *River Park*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments § 24, at 196 (1982)).

¶ 24    Here, BONY argues that its 2017 foreclosure complaint arose from a different set of facts than its prior foreclosure complaints because the 2017 complaint alleged a different default date than the earlier filed complaints. BONY gave up 30 months of interest and, potentially, other

---

*Szabo Contracting, Inc. v. Lorig Construction Co.*, 2014 IL App (2d) 131328, ¶ 43 n.4.

monetary amounts when it elected to sue on the new default date, which, as it argues here, presented the trial court with a different set of operative facts not at issue in the prior foreclosure filings. Jamie contends that all four cases arose from the same set of operative facts because BONY accelerated the note upon the first default. According to Jamie, when BONY accelerated the note, all installment obligations merged into one single obligation to pay the entire balance due under the note and the mortgage.[2]

¶ 25    " 'Generally, *** where a money obligation is payable in installments, a separate cause of action arises on each installment.' " *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 30 (quoting *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991)). Thus, a plaintiff may bring a separate action on each installment as it becomes due and owing or wait until several installments are due and owing and then sue for all such installments in one cause of action. *Barrera*, 2020 IL App (2d) 190883, ¶ 19. We recently applied these principles in *Barrera* and *Moy*. While the facts of *Barrera* and *Moy* are not on all fours with this case, these cases are applicable here regarding which facts are operative facts for purposes of the transactional test relating to the single refiling rule.

¶ 26    In *Moy*, the bank filed three foreclosure complaints against the borrower. The first two complaints alleged a default date of November 2009 for failure to pay monthly payments, and the

_____

[2] We note that we granted defendants' motion to cite additional authority, *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006. We now grant BONY's motion to cite additional authority, *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, and *Freedom Mortgage Corp. v. Engel*, 169 N.E.3d 912 (N.Y. 2021), which were published after the parties filed their briefs.

third complaint alleged default dates of July and August 2018 for failure to pay monthly payments. *Moy*, 2021 IL App (2d) 200099, ¶¶ 5-9. The trial court denied the borrower's motion to dismiss the third complaint based on *res judicata*. *Id.* ¶ 10. The trial court then granted the bank's motion for summary judgment and entered a judgment of foreclosure and sale of the property. *Id.* ¶¶ 16-17. In affirming the trial court's judgment, we applied the transactional test and determined that the third action and the two prior actions "were not predicated on a single group of operative facts," because the default dates alleged in the first two complaints "were entirely unrelated to the facts underlying the current action." *Id.* ¶ 33.

¶ 27    In *Barrera*, 2020 IL App (2d) 190883, ¶ 19, we announced the "new-default rule." *Id.* ¶ 19. The new default rule allows a party entitled to installment payments under a contract to bring a separate action on each installment as each one becomes due or wait until several installments are due. *Id.* In *Barrera*, after three prior foreclosure complaints in which the bank accelerated the note (the first complaint dismissed without prejudice, the second complaint voluntarily dismissed, and the third complaint dismissed on the borrowers' motion) (*id.* ¶¶ 6, 13), the bank filed a fourth complaint, alleging that the borrowers defaulted by failing to pay property taxes and property insurance (*id.* ¶ 3). The trial court dismissed the fourth complaint based on the single refiling rule. *Id.* ¶ 8. Applying the transactional test (*id.* ¶ 17), we held that the single refiling rule was not a complete defense to the bank's fourth foreclosure complaint because the borrowers' alleged "failures to pay taxes and insurance are new defaults." (Emphasis omitted.) *Id.* ¶ 14. We reasoned that this "new-default rule," a "specific instance of the transactional test," was necessary to provide remedies for contracts that require performance over a number of years. *Id.* ¶ 19-21. Thus, we determined that the borrowers' new defaults were not part of the core of operative facts that formed the bases of the prior complaints. *Id.* ¶ 14. We explained that the new default rule prevents

unreasonable and unjust results because a "continuing pattern of defaults should not immunize a party from suit." *Id.* ¶ 20.

¶ 28 Here, as in *Moy* and *Barrera*, the 2017 foreclosure complaint does not arise from the same set of operative facts as the prior complaints. In the first three complaints, BONY alleged that the Dubrovays were in default on the note and the mortgage for failure to make monthly installments for November 2010. These facts were entirely unrelated to the facts underlying the 2017 foreclosure complaint, based on the Dubrovay's default for failure to make monthly installments for April 2013.

¶ 29 However, this does not end our analysis, because Jamie asserts that, when BONY accelerated the entire debt pursuant to the mortgage, all the monthly payments owed merged into one single obligation to pay the entire balance due under the note and the mortgage. Thus, according to Jamie, she and Jaeson committed only one default and all four complaints arise from the same set of operative facts. BONY counters that the voluntary dismissal of its three prior foreclosure complaints deaccelerated the debt, reinstating the note and the mortgage. Therefore, according to BONY, the 2017 foreclosure complaint alleged a new default. We agree with BONY.

¶ 30 The effect of a dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 42. We note that the dissent fails to recognize that a nonsuit results in a nullity that has no binding effect, and the dissent relies on *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006, which makes this same lapse in logic. Regardless, it follows that the effect of a voluntary dismissal is the nullification of the acceleration, which then discontinues the obligation to make a single lump sum payment and reinstates the borrower's obligation to make monthly installment payments on the note. The status quo *ante*

then reinstates the right of the lender to seek acceleration and foreclosure upon any subsequent new default or defaults, consistent with the note's statement, "the Note Holder will still have the right to do so if I am in default at a later time."

¶ 31    Contrary to this pragmatic approach, the trial court's approach here improperly places the burden on the borrower to make a payment to decelerate the loan, whereas a voluntary dismissal is itself an affirmative act by the bank that puts the borrower on notice that the bank is withdrawing acceleration. See *Freedom Mortgage Corp. v. Engel*, 169 N.E.3d 912, 926 (N.Y. 2021) ("when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—*i.e.*, the withdrawal of the complaint—constitutes a revocation of that acceleration"). If commencement of a foreclosure action is sufficient to put the borrower on notice that the loan has been accelerated, then the bank's voluntary dismissal is sufficient to put the borrower on notice that acceleration has been revoked or withdrawn. *Id.*; see also *Hicks v. Wells Fargo Bank, N.A.*, 178 So. 3d 957, 959 (Fla. Dist. Ct. App. 2015) (holding that, where the bank's earlier voluntary dismissal was not an adjudication on the merits, and despite the previous acceleration of the balance owed in two prior claims, the bank was not precluded from filing a new foreclosure action based on different acts or dates of default not previously alleged).

¶ 32    Therefore, because BONY's alleged accelerations[3] occurred by the filing of foreclosure actions, BONY's voluntary dismissals of those actions constituted affirmative acts of revocation of those accelerations. It follows that upon revocation the parties returned to their pre-acceleration rights and obligations. The Dubrovays were obligated to make monthly installments; thus, their new payment default gave rise to a separate action. This alleged new default was not part of the

---

[3] As noted, *infra* ¶ 36, the record does not contain any acceleration notice sent by BONY to the Dubrovays.

core of operative facts of the prior alleged default. See *Barrera*, 2020 IL App (2d) 190883, ¶¶ 19-21. Rather, this action and the prior actions were predicated on different operative facts, the single refiling rule did not bar BONY's 2017 foreclosure complaint, and the trial court erred by dismissing BONY's complaint.

¶ 33    We note that the advantages of a clear rule that a voluntary dismissal results in revocation of acceleration (absent a lender's contemporaneous statement to the contrary) are threefold. It makes it possible for attorneys to counsel their clients accordingly. See *Engel*, 169 N.E.3d at 926. Further, it allows borrowers to take advantage of the opportunity afforded by the deacceleration, *i.e.*, reinstatement of the right to pay arrears and make installment payments, eliminating the obligation to immediately pay the entire outstanding principal amount in order to avoid losing their homes. See *id.* at 926-27. Finally, it prevents unjust results because, in the absence of this rule, borrowers would be rewarded for disregarding the notes and mortgages that they signed and then failed to pay on for numerous years. In this case, the Dubrovays have failed to pay on their debt to BONY for more than 10 years. Affirmance of the trial court's judgment would leave BONY with nothing and the Dubrovays "would retain the property that secured the repayment of the loan that enabled [the Dubrovays] to obtain said property." *Moy*, 2021 IL App (2d) 200099, ¶ 39. This would be fundamentally unfair and unjust. *Id.*

¶ 34    Jaime cites *Norris*, 2017 IL App (3d) 150764, to supports her argument. In *Norris*, the lender filed a foreclosure complaint against the defendant in 2008, alleging a default date of January 2008. *Id.* ¶ 4. The trial court entered a judgment of foreclosure and sale. *Id.* Subsequently, the lender moved to vacate the judgment and to dismiss the complaint because the lender believed that the defendant and his wife entered into a loan modification agreement. *Id.* The trial court granted the lender's motions. *Id.* In 2010, the lender filed a second complaint, alleging a default of

the original mortgage and the purported loan modification agreement and a default date of June 2009. *Id.* ¶ 5. The defendant and his now former wife disputed that they had agreed to a loan modification. *Id.* ¶ 7. In December 2011, based upon that dispute, the lender moved to dismiss the 2010 case without prejudice, which the trial court granted. *Id.* In 2012, the lender filed a third foreclosure complaint, alleging a default on the original mortgage and a default date of January 2008. *Id.* ¶ 8. When the lender moved for summary judgment, the defendant answered that the latest complaint was barred by the single refiling rule. *Id.* ¶ 11. The trial court granted the lender's motion for summary judgment. *Id.* ¶ 12. The appellate court affirmed, reasoning that the "the 2010 foreclosure case was not a refiling of the 2008 foreclosure case," because the operative facts were different. *Id.* ¶ 22. The court explained that the 2008 case alleged breach of the original mortgage and a default date of January 2008, while the 2010 case alleged breach of the original mortgage and the loan modification agreement, with a default date of June 2009. *Id.* Therefore, the 2012 case was "the first and only refiling of the 2008 case," and therefore, the 2012 case was not barred by the single refiling rule. *Id.*

¶ 35    Nothing in *Norris* changes our result here. The appellate court relied on two differences in the first and second complaints: the different default dates and the loan modification agreement raised in the second complaint. However, *Norris* does not require a lender to allege a default of a loan modification agreement where it also alleges a different default date. Thus, *Norris* does not change the result here.

¶ 36    Jamie also cites *Sigler*, 2020 IL App (1st) 191006, to support her argument. However, as we explain, *Sigler* is distinguishable from this case. In *Sigler*, the bank brought a fourth foreclosure action against the same mortgagors after the first three actions were voluntarily dismissed. *Id.* ¶¶ 7-19. The trial court dismissed the fourth complaint after finding that the second, third, and fourth

complaints all arose out of the same operative set of facts and that, therefore, the fourth complaint violated the single refiling rule. *Id.* ¶ 26. The first complaint was brought by a different plaintiff. *Id.* ¶ 53. Prior to the filing of the first complaint and right after the borrowers' default, the bank sent a notice of acceleration to the borrowers. *Id.* ¶ 43. On appeal, the appellate court affirmed, holding that the fourth complaint arose from the same set of operative facts as the second and third complaints because the bank accelerated the note before filing its claims. *Id.* ¶ 53. That the bank accelerated the note prior to filing its claims was critical to the appellate court, which reasoned:

> "Once the Siglers defaulted on the note and Deutsche Bank both *invoked the acceleration clause* and filed a foreclosure action, the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note." (Emphasis added. ) *Id.*

Here, however, the record does not contain any acceleration notice sent by BONY to the Dubrovays indicating that it actually invoked the acceleration clause. Rather, BONY voluntarily dismissed its complaints, relieving the Dubrovays of immediate full payment, thus effectively nullifying the acceleration clause. Further, pursuant to paragraph D of the note, BONY still had the right to accelerate the note when the Dubrovays defaulted at a later time. Thus, this case is distinguishable from *Sigler*. The dissent notes that BONY conceded that *Sigler* undercuts its position. *Infra* ¶ 72. However, BONY's concession is not an admission of law; rather it merely acknowledges what *Sigler* states, and it is followed by BONY's criticism of *Sigler*.

¶ 37 Further, the dissent is mistaken as to what the operative facts are as stated in the new default rule, which, again, allows a party entitled to installment payments under a contract to bring a separate action on each installment as each one becomes due or wait until several installments are due. See *Barrera*, 2020 IL App (2d) 190883, ¶ 19. BONY's voluntary dismissal put the case in the

same position it was in prior to its filing, and the failure to pay a different installment established a different set of operative facts under the installment contract. However, the dissent dwells on the facts involved in the 2011 and 2012 foreclosure complaints and disregards the passage of time and the new default date alleged in the fourth filing. The single refiling rule was never intended to bar a refiling alleging new operative facts that may provide a basis for granting relief. The dissent proposes a new rule that eviscerates the single refiling rule: the one-bite-at-the-apple rule or the single *filing* rule. The dissent's approach would be catastrophic to the purpose of the single refiling rule. Instead of facilitating the disposition of cases on the merits and avoiding frustration upon grounds unrelated to the merits (*Richter*, 2016 IL 119518, ¶ 44), the dissent's proposed rule would block the disposition of cases on the merits and invite the resolution of cases upon grounds unrelated to the merits.[4]

¶ 38    In addition, contrary to the purpose of the new default rule (*id.*), the dissent would essentially immunize borrowers who engage in a continuing pattern of default. The dissent attempts to make this unreasonable and unjust result more palatable by speculating that "BONY is not without remedy, as it will retain a lien on the property that it can exercise upon sale or any number of events in the future." *Infra* ¶ 73. Yet, the dissent cites no authority for this dubious assertion. Rather, the dissent ignores that BONY's only remedy upon sale is acceleration and then

---

[4] The dissent discounts the new operative facts alleged in BONY's 2017 foreclosure complaint. *Infra* ¶ 45. By analogy, if this were a dog-bite case, the fact that the fourth complaint alleged the same dog and the same victim as the prior complaints would preclude relief even if there were subsequent attacks.

foreclosure by judicial proceeding.[5] Thus, the dissent's approach would leave BONY without any remedy unless and until the property was sold or transferred and would reward the Dubrovays for defaulting every month for approximately 10 years.

¶ 39    Because we have determined that the trial court erred by dismissing the 2017 foreclosure complaint, we need not address BONY's argument that the trial court abused its discretion by denying its motion to set aside the dismissal of the 2017 foreclosure complaint and reinstate the 2012 foreclosure complaint.

¶ 40                                    III. CONCLUSION

¶ 41    For the reasons stated, we reverse the judgment of the circuit court of Du Page County and remand the case for further proceedings.

¶ 42    Reversed and remanded.

¶ 43    JUSTICE HUTCHINSON, dissenting:

---

[5] The parties' mortgage provides:

"18. *** If any or all of the Property *** is sold or transferred *** Lender may require immediate payment of all sums secured by this Security Instrument. *** If Lender exercises this option, Lender shall give Borrower notice of acceleration. *** If Borrower fails to pay these sums prior to the expiration of [30 days], Lender may invoke any remedies permitted by this Security Instrument ***.

* * *

22. Acceleration; Remedies. *** If the default is not cured on or before the date specified in the notice, Lender may foreclose this Security Instrument by judicial proceeding[.]"

¶ 44     I respectfully dissent from the majority's reversal of the trial court's dismissal of BONY's 2017 foreclosure complaint for violating the single refiling rule and its denial of  BONY's motion to reconsider that dismissal. The majority relies on incompatible Illinois cases and creates new law based in foreign case holdings. The majority disregards established Illinois case law and statutes that clearly support affirmance of the trial court's dismissal, because the majority does not like that result. However, the majority's holding renders the single refiling rule and its transactional test meaningless.

¶ 45     Under the transactional test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 184 Ill. 2d at 311. Claims are "considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.* When a plaintiff seeks to foreclose on a mortgage, it makes those facts alleged "operative" if it seeks to adjudicate its rights under that mortgage. *Cobo*, 2018 IL 123038, ¶ 39. The focus of the inquiry, therefore, is on whether the relief requested is based on substantially the same facts. *Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820, 833 (2010).

¶ 46     To reiterate the facts here briefly, all four of BONY's foreclosure complaints contain the exact same mortgage and note. BONY elected to accelerate the Dubrovays' debt pursuant to the note's and the mortgage's provisions following default on October 1, 2010. The Dubrovays were obligated to pay the entire balance due under the mortgage and the note. In her affidavit attached to her motion to dismiss pursuant to section 2-619 of the Code, Jamie attested that no payments were made after October 1, 2010. BONY does nothing to dispute that fact. All four foreclosure complaints filed by BONY contain the same election to accelerate the entire debt under paragraph

22 of the mortgage. All four complaints (1) were filed against the same defendants, (2) demanded the same unpaid principal balance of $774,228.25, and (3) contained identical requests for recovery and prayers for relief. There is no evidence of a loan modification or any other type of forbearance agreement between BONY and the Dubrovays that would have taken the debt out of acceleration and created a transaction distinct from the prior filings, thus providing a new set of operative facts. *Cf. Norris*, 2017 IL App (3d) 150764, ¶ 22 (holding that the single refiling rule was not violated where there was evidence of a loan modification).

¶ 47    In an attempt to distinguish the operative facts at hand, BONY's 2017 foreclosure complaint did change the default date by 30 months, but it left the unpaid principal the same as the prior three complaints. The Dubrovays were in default under the mortgage beginning on October 1, 2010, as reflected in the 2011 foreclosure complaint. That operative fact did not change when BONY filed the 2012 foreclosure complaint, the 2016 foreclosure complaint, or the 2017 foreclosure complaint. There was no new default by defendants following BONY's election to accelerate the Dubrovays' debt pursuant to the note's and the mortgage's provisions to trigger the new default rule. *Barrera*, 2020 IL App (2d) 190883, ¶ 19.

¶ 48    Nevertheless, the majority relies on two Illinois cases—*Barrera* and *Moy*—that it concedes are "not on all fours with this case," in determining that the 2017 foreclosure complaint presented a new set of operative facts for purposes of the single refiling rule and *res judicata*. While I agree with the majority that *Barrera* and *Moy* are "not on all fours" with the facts presented here, I remain unconvinced that either case supports the majority's holding in any meaningful way, and I believe that they indeed are inapposite to the facts presented here.

¶ 49    In *Barrera*, the plaintiff-bank, Wilmington Savings Fund Society, FSB (Wilmington), filed a foreclosure complaint against the defendants, alleging four defaults: (1) failure to reimburse

Wilmington for payments it made for insurance on the property, (2) failure to reimburse Wilmington for property taxes it paid on the property, (3) failure to pay for insurance on the property directly, and (4) failure to pay the property taxes on the property directly. *Barrera*, 2020 IL App (2d) 190883, ¶ 3. Wilmington was the successor in interest to the defendants' mortgage and promissory note, following several assignments. *Id.* ¶ 5. The original lender executed the mortgage with the defendants, requiring the monthly payment of principal and interest (as set forth in the note), an amount to cover the taxes on the property, and the maintenance of hazard insurance on the property. *Id.* ¶ 4. The defendants' failure to maintain hazard insurance or include tax payments in the monthly payment triggered the lender's obligation to make its own payments for insurance and taxes, payments that would become additional debt secured by the mortgage. *Id.*

¶ 50    The defendants filed a motion to dismiss Wilmington's foreclosure complaint, citing the single refiling rule of section 13-217 of the Code. *Id.* ¶ 6. In support of their assertion that the rule barred the most recent foreclosure complaint, the defendants noted that (1) Wilmington's predecessor in interest had filed two earlier foreclosure cases relating to the mortgage at issue, and (2) Wilmington itself had also earlier filed a foreclosure case. *Id.* Wilmington argued that the defendants' failure to make payments for insurance and property taxes, obligations under the mortgage, were the sole default claimed in the pending foreclosure action, not the payment of principal and interest, which were obligations under the note. *Id.* ¶ 7. In granting the defendants' motion to dismiss Wilmington's foreclosure complaint pursuant to the single refiling rule, the trial court found:

> " 'In applying the transactional test as identified in [*Cobo*,] this Court believes that this fourth lawsuit arises from the same single group of operative facts; the prior three lawsuits were seeking to adjudicate the parties' rights under the same mortgage and note;

and the advances identified in the fourth complaint of real estate taxes and hazard insurance were specifically requested in the first and second complaints.' " *Id.* ¶ 8.

¶ 51 On appeal, Wilmington conceded that, "because it sought to accelerate the note, the single refiling rule might have barred it from claiming that any new defaults occurred on that note." *Id.* ¶ 13. However, it contended that the defendants' tax and insurance obligations were not barred by the single refiling rule because they could not be accelerated. This court agreed, holding that the single refiling rule cannot bar a complaint based on a *later* default. *Id.* ¶ 14. As tax and insurance obligations are ongoing, the single refiling rule was not a complete defense to Wilmington's foreclosure complaint. *Id.* This court went on to hold that an earlier judgment relating to a course of conduct " 'does not bar claims for continuing conduct complained of in the second lawsuit that occur[s] after judgment has been entered in the first lawsuit.' " *Id.* ¶ 19 (quoting *D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 224 (1997)). The transactional test, articulated by our supreme court in *Cobo*, "does not bar suits for defaults on installment payments whose due dates occur *after* the filings of the prior complaints." (Emphasis added.) *Id.* Under the new default rule as applied to contracts:

> " 'where a money obligation is payable in installments, a separate cause of action arises on each installment.' [Citation.] The 'party entitled to payments may bring separate actions on each installment as it becomes due or wait until several installments are due and then sue for all such installments in one cause of action.' " *Id.* (quoting *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991)).

¶ 52 Aside from Wilmington's concession that it was barred from claiming any new defaults on the note following its acceleration, the facts in the present case are distinguishable from those in *Barrera*. The new default rule would not apply, as BONY's 2017 foreclosure complaint makes no

allegation of the Dubrovays' failure to pay an ongoing obligation under the mortgage or the note after its election to accelerate the debt following the original default. The 2017 foreclosure complaint arises from the same single group of operative facts as the prior three lawsuits and seeks to adjudicate the parties' rights under the same mortgage and note.

¶ 53    In *Moy*, the bank filed a November 17, 2009, foreclosure complaint against the defendant, alleging default on the mortgage since 2008 after failure to make installment payments on the loan. *Moy*, 2021 IL App (2d) 200099, ¶ 5. As a result, the bank elected to accelerate all amounts due under the mortgage. *Id.* The defendant ultimately prevailed in the suit, as the evidence regarding the amount of the debt owed was insufficient to support a foreclosure judgment. *Id.* Then, in September 2017, the bank filed a second foreclosure complaint, alleging failure to make " 'monthly payments of principal and interest for November 2009 through the present, and [failure] to pay real estate taxes on the mortgaged premises.' " *Id.* ¶ 7. The trial court granted the defendant's motion to dismiss based on *res judicata*. *Id.* Finally, in November 2018, the bank filed a third foreclosure complaint alleging default under the note and the mortgage for failure to pay the monthly payments for July and August 2018 and failure to cure the default following notice. The bank then "*accelerated all amounts due and owing under the note and demanded payment in full.*" (Emphasis added.) *Id.* ¶ 9. This court affirmed the trial court's finding that the bank's change of the default date created a new set of operative facts, negating the application of *res judicata*. *Id.* ¶ 33. Thus, *Moy* extrapolates the new default rule articulated in *Barrera* to apply to accelerated debt following the dismissal of a foreclosure complaint, allowing the majority here to accept BONY's contention that voluntary dismissal of its three prior foreclosure complaints "deaccelerated" the debt and reinstated the note and the mortgage, thereby creating a new series of missed monthly installment payments and "new defaults."

¶ 54     Returning to the facts of the present case, the majority quotes paragraph 22 of the mortgage, dealing with acceleration: " 'Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument ***.' " *Supra* ¶ 3. The record in this case clearly indicates that BONY did not provide notice of acceleration to Jamie or the Dubrovays at any point beyond the first foreclosure complaint. Thus, even if we are to accept the proposition in *Moy* that the debt "deaccelerates" as a matter of law, BONY would be required to file a new notice of acceleration unless it is seeking only the last missed payment in its 2011 foreclosure complaint. As evidenced by the allegations in its subsequent three foreclosure complaints, it is seeking the full amount of principal and interest after acceleration. So regardless of whatever arbitrary date of default BONY chooses to allege in order to change the operative facts, its failure to provide notice of acceleration following "deacceleration" because of voluntary dismissal renders the holding in *Moy* distinguishable and inapplicable to the facts here.

¶ 55     Further, there is no disputing the fact that Jamie never made another payment beyond the original default date. There is no evidence of a new amortization schedule requiring monthly installments after the dismissal of any of the foreclosure complaints. What is the "new default?" What difference would it have made if BONY's fourth foreclosure complaint named any date after the dismissal of the first complaint? According to the logic in *Moy*, and that applied by the majority to the facts of this case, any date would be sufficient as a new set of operative facts, even if chosen at random.

¶ 56     Complicating matters a bit more, *Moy* states that "the parties cite conflicting cases from our sister states. However, these cases are not binding here and are not persuasive to the extent that they conflict with established Illinois law." *Moy*, 2021 IL App (2d) 200099, ¶ 27. (Ironically, the majority elects to rely on foreign jurisprudence for the idea of "deacceleration" following

foreclosure dismissal (see *supra* ¶ 31).) *Moy* then applies *Barrera*'s new default rule to new missed payments following "deacceleration" (that term is not used in *Moy* but implied through the logic of the holding), even though *Barrera* applied specifically to continued missed property tax and insurance payments (*Barrera*, 2020 IL App (2d) 190883, ¶ 14). Furthermore, at the time *Moy* was published, there already existed established Illinois law on the issue presented: *Sigler*. This court did not go so far as to call *Sigler* incorrect in *Moy* (although the majority in the present case takes that position) but instead applied *Sigler*'s holding to support the notion that the defendant and the bank remained in the same contractual relationship, with the same continuing obligations, after dismissal of the first two foreclosure actions; thus, it reasoned, a new default occurred after subsequent missed payments on a nonexistent payment schedule. See *Moy*, 2021 IL App (2d) 200099, ¶ 37. An in-depth review of *Sigler*, however, does not support the majority's holding.

¶ 57    In *Sigler*, the defendants (Siglers) executed a promissory note in August 2006 for a loan secured by a mortgage on residential property, and the note was ultimately assigned to the plaintiff, Deutsche Bank (DB). 2020 IL App (1st) 191006, ¶ 3. The repayment terms as well as the acceleration provisions contained in both the note and the mortgage were identical to those in the present case. See *id.* ¶ 4. On March 1, 2008, the Siglers defaulted on the note, and DB sent notice to them in May 2008 that the default must be cured within 30 days or DB would accelerate the loan, making the full amount " 'due and payable without further demand, and begin foreclosure proceedings.' " *Id.* ¶¶ 5-6. The Siglers failed to cure the default within 30 days. *Id.* ¶ 6.

¶ 58    In June 2008, DB filed its first foreclosure complaint against the Siglers but listed an incorrect name as the plaintiff entity. *Id.* ¶¶ 7-8. The entity listed did not actually exist, so DB voluntarily dismissed the first foreclosure complaint in October 2011. *Id.* ¶ 11.

¶ 59 The following day, DB filed its second foreclosure complaint against the Siglers. *Id.* ¶ 12. This time, DB listed the plaintiff entity correctly and would do so in all subsequent foreclosure filings against the Siglers. *Id.* The second foreclosure complaint alleged that the Siglers defaulted on the note from March 1, 2008, through the date of filing and that the Siglers owed $681,000 in unpaid principal, plus all interest and expenses. *Id.* ¶ 13. DB voluntarily dismissed the second foreclosure complaint in December 2011. *Id.*

¶ 60 DB filed a third foreclosure action against the Siglers in February 2012 and alleged the same amount of unpaid principal balance ($681,000) but alleged that the Siglers defaulted on the note from December 1, 2011, through the date of the third foreclosure's filing. *Id.* ¶ 14. The Siglers sought to dismiss the third foreclosure action for violating the single refiling rule, which the trial court denied. *Id.* ¶ 15. Following the parties' cross-motions for summary judgment, wherein the Siglers again invoked the single refiling rule, the trial court entered summary judgment in favor of DB. *Id.* ¶ 17. However, DB voluntarily dismissed the third foreclosure complaint in March 2016. *Id.* ¶ 18.

¶ 61 Later in March 2016, DB filed the fourth foreclosure complaint against the Siglers and alleged that they had "failed to make payments when due and the subject loan has been accelerated.' " *Id.* ¶ 19. The fourth foreclosure complaint alleged $681,000 in unpaid principal, plus interest, costs, and attorney fees. DB alleged that the Siglers had paid the loan through February 1, 2008. *Id.*

¶ 62 The Siglers filed a motion to dismiss the fourth foreclosure complaint in December 2016, alleging a violation of the single refiling rule, as the complaint arose out of the same operative facts as the prior three foreclosure actions filed by DB. *Id.* ¶ 20. The trial court denied the motion without prejudice in September 2017. *Id.* The Siglers then filed their answer to the fourth

foreclosure action and an affirmative defense that the complaint was barred by the single refiling rule. The trial court granted DB's motion to strike that affirmative defense. *Id.* ¶ 21. Following DB's filing of an amended motion for summary judgment, the Siglers filed a motion to reconsider both the denial of their motion to dismiss the fourth foreclosure complaint for violating the single refiling rule and the order striking their affirmative defense claiming the same. *Id.* ¶ 24. The trial court granted the Siglers' motion to reconsider and found that the second, third, and fourth foreclosure complaints " 'all arise out of the same operative facts.' " *Id.* ¶ 26. DB's fourth foreclosure complaint was dismissed with prejudice. *Id.*

¶ 63    On appeal, DB argued that all four foreclosure complaints were based on a different set of operative facts and, therefore, not in violation of the single refiling rule. *Id.* ¶ 35. The Siglers argued that each of the four foreclosure complaints arose from the same operative facts, as they were brought by the same trustee, sought the same principal amount of $681,000, alleged default of the same underlying note and mortgage, and were born of the same initial default and acceleration election by DB. *Id.* ¶ 36.

¶ 64    The court found that the first foreclosure complaint listed a nonexistent entity as trustee and, consequently, none of the subsequent foreclosure complaints could be considered a refiling of that action. *Id.* ¶ 39. However, the court agreed with the Siglers that DB's fourth foreclosure complaint was the second refiling of the second action. Relying on *Thread & Gage Co. v. Kucinski*, 116 Ill. App. 3d 178, 184 (1983), the court held that, after the Siglers committed their lone default by failing to make the March 1, 2008, payment, DB's election to accelerate the loan and seek the entire principal amount due ($681,000) formed the basis for a cause of action. *Sigler*, 2020 IL App (1st) 191006, ¶¶ 42-44, 53. Therefore, the second, third, and fourth foreclosure filings arose out of

the same set of operative facts, and the fourth foreclosure complaint was an impermissible refiling of the second complaint, pursuant to the single refiling rule. *Id.* ¶ 53.

¶ 65    As to DB's contention that its election to invoke the acceleration provision of the note was irrelevant for the purposes of the single refiling rule, because of the different alleged default date in the third foreclosure complaint, the court held that, "[o]nce the Siglers defaulted on the note and [DB] both invoked the acceleration clause and filed a foreclosure action, the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note." *Id.* Hence, the court found, the fourth foreclosure complaint arose from the same set of operative facts as the second and third complaints

> "because [DB] accelerated the note no later than the date it filed [the second foreclosure complaint], and it is undisputed that the Siglers never made any payments following their March 1, 2008, default, the underlying note and mortgage never changed, the note was never reinstated, and [DB] sought the same principal amount in [the second, third, and fourth foreclosure complaints]." *Id.*

¶ 66    The *Sigler* court also found unpersuasive DB's argument that the fourth foreclosure complaint arose from a different set of facts than the second and third foreclosure complaints because, as DB averred, it sent the Siglers a second " 'notice of default,' " which " 'un-accelerated' " the note and created a new cause of action. *Id.* ¶ 56. The court held that the notice sent would not affect its analysis under the single refiling rule because DB acknowledged on appeal that the notice informed the Siglers only that " 'they could reinstate the loan for less than the full amount due' " and " 'offered reinstatement' " at a reduced amount. *Id.* The acceleration remained in effect, as the Siglers never accepted DB's offers to reinstate the note. *Id.*

¶ 67    Because there was only one default by the Siglers (followed by their failure to cure that default) and an acceleration of the note, allowing DB to "circumvent the single-refiling rule simply by changing the date from which it sought accrued interest would mean that [DB's] claims would never be barred by any prior adjudication because interest kept accruing as time passed following the initial default." *Id.* ¶ 57.

¶ 68    I find the holding of the court in *Sigler*—an Illinois court—instructive to the present appeal. There is no dispute that all BONY's foreclosure complaints were born of the same default by that prompted BONY's election to invoke the acceleration provision of the note and the mortgage and that no loan modification or forbearance agreement was ever executed following the default. Each foreclosure complaint sought the same amount of unpaid principal, but only the 2017 foreclosure complaint alleged a different default date. As in *Sigler*, BONY's foreclosure filings followed only one default by the Dubrovays and their failure to cure the default following the election to accelerate the note. BONY's mere change of the date from which it sought accrued interest does not allow for circumvention of the single refiling rule. None of the operative facts changed in any of the four foreclosure complaints filed by BONY. Thus, the relief requested is based on substantially the same facts.

¶ 69    Further damaging BONY's contention here, *vis-à-vis* the facts in *Sigler*, is the lack of any documentation in the record illustrating that BONY provided the Dubrovays with any subsequent notice of default following the dismissal of any of the foreclosure complaints. Indeed, BONY does not dispute the assertions made in Jamie's affidavit attached to the motion to dismiss the 2017 foreclosure complaint. See *supra* ¶ 12. Jamie averred that (1) the mortgage fell into default in October 2010, (2) she was served with a summons and a complaint for each foreclosure filing, (3) she received notice that BONY was voluntarily dismissing the first three foreclosure

complaints, (4) she never made any payment following the October 2010 default, and (5) she never executed a loan modification or "any other type of debt-relief action that would allow [her] to resume making monthly payments on the mortgage." BONY's failure to provide the Dubrovays with any notice of default following the voluntary dismissal of any of its foreclosure complaints is fatal to any argument that the accelerated amount due "deaccelerated" to allow for a different set of operative facts upon refiling a subsequent foreclosure action. See *Sigler*, 2020 IL App (1st) 191006, ¶ 56.

¶ 70    I note that *Sigler* was published during the pendency of the present appeal. In its response to Jamie's motion to cite *Sigler* as additional authority, BONY takes issue with the *Sigler* court's holding as based on "the legal conclusion that once the acceleration clause was invoked, the contract became indivisible." BONY points to section 15-1602 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1602 (West 2018)), as well as a foreign jurisdiction's holding, for the proposition that "the installment nature of a loan secured by a mortgage continues until a final judgment of foreclosure is entered."

¶ 71    Section 15-1602 of Illinois Mortgage Foreclosure Law states, in its entirety, as follows:

"In any foreclosure of a mortgage executed after July 21, 1959, which has become due prior to the maturity date fixed in the mortgage, or in any instrument or obligation secured by the mortgage, through acceleration because of a default under the mortgage, a mortgagor may reinstate the mortgage as provided herein. *Reinstatement is effected by curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults, provided that such cure and payment are made prior to the expiration of 90 days from the date the mortgagor or, if*

*more than one, all the mortgagors (i) have been served with summons or by publication or (ii) have otherwise submitted to the jurisdiction of the court.* When service is made by publication, the first date of publication shall be used for the calculation. Upon such reinstatement of the mortgage, the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and the mortgage documents shall remain in full force and effect as if no acceleration or default had occurred. The relief granted by this Section shall not be exhausted by a single use thereof, but if the court has made an express written finding that the mortgagor has exercised its right to reinstate pursuant to this Section, such relief shall not be again available to the mortgagor under the same mortgage for a period of five years from the date of the dismissal of such foreclosure. The provisions of Section 9-110 of the Code of Civil Procedure shall be inapplicable with respect to any instrument which is deemed a mortgage under this Article. The court may enter a judgment of foreclosure prior to the expiration of the reinstatement period, subject to the right of the mortgagor to reinstate the mortgage under this Section." (Emphasis added.) *Id.*

Without belaboring the facts of the present appeal, none of the statute's requirements for reinstatement articulated above were met here, and BONY's assertion otherwise is in error.

¶ 72    BONY admits in its response to Jamie's motion to supplement the record that the holding in *Sigler* "undercuts an argument BONY made in this case, to-wit; that where a subsequent complaint alleges a different default date than a prior suit[,] it is not the same for purposes of the single-refiling rule." I agree with BONY on this admission. Allowing BONY to circumvent the single refiling rule simply by changing the date from which it sought accrued interest would mean

that its claims would never be barred by any prior adjudication because interest kept accruing as time passed following the initial default. See *Sigler*, 2020 IL App (1st) 191006, ¶ 57.

¶ 73 Here, we have established Illinois law (as articulated in *Sigler*) as well as two statutes (section 13-217 of the Code of Civil Procedure and section 15-1602 of the Illinois Mortgage Foreclosure Law) directly on point with the facts of the present case. Although I would agree with the majority that affirming the trial court's dismissal of BONY's 2017 foreclosure complaint creates a somewhat inequitable result (as it stands, BONY is not without remedy, as it will retain a lien on the property that it can exercise upon sale or any number of events in the future), this court is obligated to apply existing, unambiguous statutory authority and case law to the facts of each case. Doing so here requires this court to affirm the trial court's dismissal of BONY's 2017 foreclosure complaint for violating the single refiling rule. It is up to the legislature or our supreme court to expand the single refiling rule to cover cases such as this or to reconsider its application to cases such as this.

¶ 74 Thus, I would affirm the judgment of the circuit court of Du Page County, and I respectfully dissent.

---

**No. 2-19-0540**

---

| | |
|---|---|
| **Cite as:** | *Bank of New York Mellon v. Dubrovay*, 2021 IL App (2d) 190540 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, Nos. 12-CH-4068, 17-CH-1394; the Hon. James D. Orel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James V. Noonan and Brendan McClelland, of Noonan & Lieberman, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Luke P. Wiley, of Wiley Law Group, LLC, of Chicago, for appellee. |

---