**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240116-U

Order filed December 3, 2024
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| MICHELLE GIESE, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0116 |
| | ) | Circuit No. 23-LA-57 |
| NATHANIEL BOYCE and | ) | |
| CITY OF KANKAKEE, | ) | Honorable |
| | ) | Lindsay A. Parkhurst, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.
_____

**ORDER**

¶ 1    *Held*: The circuit court did not err in granting defendants' motion to dismiss plaintiff's amended complaint with prejudice as untimely under the one-year statute of limitations set forth in section 8-101(a) of the Illinois Local Government and Governmental Employees' Tort Immunity Act (745 ILCS 10/8-101(a) (West 2022)). Affirmed.

¶ 2    Plaintiff, Michelle Giese, brought claims under the Illinois Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2018)) against defendants, Nathaniel Boyce and the City of Kankakee (City), and an indemnity claim against the City. Plaintiff appeals from the circuit court's order granting

defendants' motion to dismiss plaintiff's amended complaint with prejudice as untimely under the one-year statute of limitations set forth in the Illinois Local Government and Governmental Employees' Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101(a) (West 2022)). For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        We recount the facts as pled in the operative amended complaint. Plaintiff worked for the Kankakee Fire Department (Department) for over 10 years, was the only female lieutenant, and was "one of the only" female firefighters in the Department. Plaintiff had worked with Boyce—also a lieutenant in the Department—for several years and had helped Boyce through "previous alcohol and anger issues and even sponsored him at one point" before the incident giving rise to the underlying action. The incident occurred on October 18, 2018, when plaintiff, Boyce, and other firefighters were responding to an active fire at a senior living facility. Boyce entered on one side of the building; plaintiff and other male firefighters entered on the other side of the building and proceeded inside an apartment to assist an elderly couple. Plaintiff was the second firefighter to enter the apartment.

¶ 5        Plaintiff alleged that, "[r]ight after she entered, Defendant Boyce, without provocation, pushed through the door, ran past another male firefighter, stormed toward Plaintiff." Boyce "began screaming right in her face and attacked her, picking her up by the straps of her oxygen harness, lifting her off her feet, repeatedly shoving her into the wall, and screaming incoherently." Boyce then allegedly slammed plaintiff against the wall three times and refused to let go of plaintiff, at which point the two fell into the bathroom hallway where Boyce continued to batter her. After the other firefighters contained the fire, Boyce "gathered only the male firefighters together outside, precluding Plaintiff, and tried to justify his actions."

2

¶ 6    Plaintiff further alleged that she reported the incident to the Department's Incident Commander—David Wiechen—and the Department's Deputy Chief—Jeff Bruno. Wiechen informed plaintiff that Boyce had reported that he " 'lost it, got in someone's face, and pushed them up against the wall.' " Bruno ordered all witnesses to produce statements, but "Defendants did not remove any personnel from the shift, nor was any drug or alcohol testing ordered." Rather, plaintiff and Boyce remained "on shift" after the incident, although they were in separate firehouses. In the ensuing weeks, plaintiff alleged that she "followed the chain of command" and sent a written statement memorializing the incident to Wiechen, Bruno, and the Department's Fire Chief—Damon Schuldt—and that the union was notified of the incident on October 20, 2018. Plaintiff alleged that, on October 22, 2018, and October 25, 2018, Schuldt spoke with plaintiff at the firehouse in front of other firefighters and told plaintiff that she "must amend her schedule so she would not be around [] Boyce" and that he knew of Boyce's "prior anger and alcohol issues." Plaintiff alleged that, following the October 18, 2018, incident, Boyce has engaged in "various other violent acts against his co-workers" without termination or proper discipline.

¶ 7    According to the amended complaint, due to the psychological trauma from the incident, plaintiff began to use her sick time from November 4, 2018, until the December 13, 2018, approval of her workers' compensation claim. Meanwhile, on November 5, 2018, plaintiff learned that the City's Human Resources (HR) Department had not been informed of the incident. Plaintiff spoke with the City's Comptroller "who claimed she would inform the city's part-time HR Director" and that plaintiff should receive a call back that day, but plaintiff did not receive a return call. Plaintiff further alleged that, "[w]ithin minutes of her call" to HR, she received a call from Schuldt "berating her for contacting" the City's HR Department and again instructing her to trade shifts so as not to work the same shift as Boyce. On December 11, 2018, plaintiff again called the HR Department

3

after learning that a new HR Director had been appointed. Several months later, on March 25, 2019, the new HR Director called plaintiff and told her that he and Schuldt were working on a return-to-work plan and would contact plaintiff about the details; however, the HR Director "did not call her back." In the interim, on March 13, 2019, plaintiff visited the fire station, "where she discovered that her co-workers had been instructed not to speak with her."

¶ 8　　　　Plaintiff alleged that, subsequently, on April 12, 2019, she called the HR Director again, and he told plaintiff that if she did not report to work on April 15, 2019, she would be terminated and instructed her "to report to the Chief for alternate duty assignment." Plaintiff alleged that she reported to work on April 15, 2019, to avoid termination, although she was still experiencing physical and emotional effects from the attack. On April 16, 2019, plaintiff was instructed to complete an "Accommodations Request Form," but Schuldt allegedly did not inform his staff that plaintiff had work restrictions, and "[d]efendants rewrote the restrictions, including going to fire scenes, loading and packing the hose, cleaning up scenes, and driving the fire truck." According to the amended complaint, three weeks later, on May 10, 2019, plaintiff had to be sent home and was "sent to a physician that night because of symptoms, including hives on her face and neck, blisters under her armpits, and elevated blood pressure." Plaintiff alleged that she lost her career and pension and continues to suffer from physical and mental distress, including but not limited to tension headaches, hypertension, heart palpitations, nausea, vomiting, diarrhea, weight loss, loss of appetite, and fear of interaction with Boyce.

¶ 9　　　　Prior to filing the underlying state court action here, plaintiff filed a lawsuit in federal court also arising out of the October 18, 2018, incident. We recount the procedural history of the federal court proceedings and then turn to the instant state court proceedings.

¶ 10　　　　　　　　　　　　　　　　A. Federal Case

4

¶ 11　　　　On April 5, 2019, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). Following issuance of a right-to-sue letter, on July 18, 2019, plaintiff filed a 16-count complaint in the United States district court for the Central District of Illinois against defendants (and against Schuldt), raising, *inter alia*, claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (2018)) and 42 U.S.C. § 1983 (2018) and various other federal constitutional and state law claims. One of the state law claims was a count for violation of the Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2018)). In relevant part, the allegations overlapped with the allegations set forth above in the (subsequently filed) amended complaint in state court. Certain claims were later dismissed on the pleadings, but the Gender Violence Act count survived. See *Giese v. Boyce*, No. 19-CV-1245, 2020 WL 12812484 (C.D. Ill. Nov. 2, 2020) (unpublished).

¶ 12　　　　Following discovery, defendants moved for summary judgment, which, on May 10, 2022, the district granted as to all federal claims, including, as set forth in the district court's order, claims for sex discrimination and retaliation in violation of Title VII and sex discrimination in violation of equal protection under section 1983 as well as *Monell* claims against the City and Schuldt (see *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) (direct liability under section 1983 may be established against a local governmental body or its policymakers where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury")). *Giese v. Boyce*, No. 19-CV-1245, 2022 WL 2092659 (C.D. Ill. May 10, 2022) (unpublished), *aff'd sub nom. Giese v. City of Kankakee*, 71 F.4th 582 (7th Cir. 2023). With respect to the sex discrimination claims, the district court found that plaintiff "failed to marshal evidence that would allow a reasonable jury to conclude that she suffered an adverse employment event,

5

either through a single tangible or discrete action or through the creation of a hostile work environment." *Id.* at *13. Regarding the retaliation claim, the district court found that plaintiff failed to present sufficient evidence to allow a reasonable jury to conclude that she suffered the broader "materially adverse action" required to support such a claim. *Id.* at *15. And finally, the district court found that plaintiff failed to introduce evidence that would allow a rational jury to conclude that she suffered a deprivation of her constitutional rights for purposes of the *Monell* claim. *Id.*

¶ 13 Critically, having granted summary judgment on the federal claims, the district court proceeded to relinquish supplemental jurisdiction over the pending state law claims, which collectively included the Gender Violence Act count and counts for intentional infliction of emotional distress, assault and battery, gross negligence, conspiracy, and indemnification. *Id.* at *16. In doing so, the district court noted that neither party took a position with respect to the discretionary exercise of supplemental jurisdiction and that "when all federal claims in a suit are dismissed before trial, there is a 'presumption' that the court will relinquish supplemental jurisdiction over the supplemental state law claims." *Id.* at *6, 16 (quoting *RWJ Management Co. v. BP Products North America, Inc.*, 672 F.3d 476, 479 (7th Cir. 2012)). The district court ultimately relinquished supplemental jurisdiction over the state law claims and dismissed the claims without prejudice. *Id.* at *16. In addition, as Boyce was only a named defendant in the state law claims, the district court denied Boyce's summary judgment motion as moot.

¶ 14 Plaintiff appealed the entry of summary judgment on the Title VII retaliation and *Monell* claims only and "expressly abandoned her sex discrimination claims under Title VII and the Equal Protection Clause in her opening appellate brief." *Giese*, 71 F.4th at 588. As for the Title VII retaliation claim, the Seventh Circuit reasoned that the only protected activity on which plaintiff

6

could base the claim was the filing of her April 5, 2019, EEOC charge and that plaintiff failed to present evidence of an adverse employment action after that date. *Id.* at 591. Namely, the record did not support plaintiff's contention that she was required to return to work against medical advice; there was no evidence that the HR Director told plaintiff that she would be terminated if she did not report to work by the specified date; and plaintiff conceded that she was never required to perform tasks that she was not authorized to perform. *Id.* at 591-92. Regarding plaintiff's *Monell* claim, the Seventh Circuit held that the claim failed because there was no evidence to demonstrate that Boyce's past behavior was so widespread that the Department's failure to address it suggested the existence of a "code of silence." In addition, the court held that, while the evidence may have shown that Boyce "had a bad temper, a drinking problem, and poor judgment," no reasonable jury could find that there was such a high risk that Boyce would act aggressively towards another firefighter such that the failure to address it constituted deliberate indifference. *Id.* at 589-90. The Seventh Circuit sympathized with plaintiff, "who continues to suffer mental and physical injuries from an attack that should never have occurred," but determined that her remedy, if any, was not in federal court. *Id.* at 592.

¶ 15                                 B. The Instant Case

¶ 16        On July 17, 2023—14 months after the district court's May 10, 2022, order relinquishing jurisdiction over the state law claims—plaintiff filed her initial complaint in the circuit court of Kankakee County against Boyce and the City, alleging a claim under the Gender Violence Act as well as claims for intentional infliction of emotional distress, assault, battery, and indemnity against the City. Following the circuit court's grant of plaintiff's motion to amend the complaint, on October 2, 2023, plaintiff filed the operative three-count amended complaint. The amended complaint raised two claims against Boyce and the City under the Gender Violence Act and an

indemnity claim against the City. The two Gender Violence Act counts were based, respectively, on: (1) battery (see 740 ILCS 82/5(1) (West 2018) (" 'gender-related violence,' which is a form of sex discrimination, means," *inter alia*, (1) "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.")); and (2) assault (see 740 ILCS 82/5(3) (West 2018) (" 'gender-related violence,' which is a form of sex discrimination, means," *inter alia*, (3) "[a] threat of an act described in item (1) *** causing a realistic apprehension that the originator of the threat will commit the act."))[1]

¶ 17    On October 19, 2023, defendants filed a motion to dismiss the amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Defendants first argued that plaintiff's action was not filed within the Tort Immunity Act's one-year statute of limitations such that the amended complaint should be dismissed as untimely pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2022) (allowing for involuntary dismissal on the basis "[t]hat the action was not commenced within the time limited by law")). See 745 ILCS 10/8-101(a) (West 2022) ("No civil action other than an action described in subsection (b) [medical malpractice actions] may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."); *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 13 (2004) ("the comprehensive protection afforded by section 8-101 necessarily controls over other statutes of limitation or repose.").

---

[1] We note that certain provisions of the Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2018)) were recently amended, although the amendments are not discussed by the parties and not at issue here. See Pub. Act. 103-282, § 5 (eff. Jan. 1, 2024).

¶ 18        Specifically, defendants asserted that plaintiff did not file her complaint in state court until 14 months after the district court relinquished supplemental jurisdiction and, thus, the action was barred by the one-year statute of limitations. See 735 ILCS 5/13-217 (West 1994))[2] ("In the actions *** where the time for commencing an action is limited, if *** the action is dismissed by the United States District Court for lack of jurisdiction, *** then, whether or not the time for bringing such action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is dismissed by a United States District Court for lack of jurisdiction ***."); *Wade v. Byles*, 295 Ill. App. 3d 545, 546-47 (1998) (rejecting the plaintiff's argument that the one-year period in section 13-217 was tolled during the pendency of his appeal to the Seventh Circuit from the district court's order granting summary judgment to the defendants on the federal claim and dismissing the state law claims for lack of supplemental jurisdiction).

¶ 19        Alternatively, defendants argued that the amended complaint should be dismissed as barred by issue preclusion, or collateral estoppel, pursuant to section 2-619(a)(4) of the Code (735 ILCS 5/2-619(a)(4) (West 2022) (allowing for involuntary dismissal on the basis "[t]hat the cause of action is barred by a prior judgment")). According to defendants, there was a final judgment in the federal case; all parties here were parties there; and the issue decided in the federal case is the same one presented under the Gender Violence Act, *i.e.*, whether Boyce's conduct was "committed, at

---

[2] Public Act 89-7 amended section 13-217 in March 1995 (Pub. Act. 89-7 (eff. Mar. 9, 1995)) but was held to be unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Thus, the version of section 13-217 currently in effect is the version that was in effect prior to that amendment. See *Wells Fargo Bank, N.A. v. Rodriguez*, 2024 IL App (3d) 230020, ¶ 1 n.1 (citing *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1 (2008)).

least in part, on the basis of a person's sex ***." See 740 ILCS 82/5(1) (West 2018). And third, defendants argued that the amended complaint should be dismissed for failure to state a claim pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)) because, *inter alia*, plaintiff did not plead sufficient facts to allow an inference that Boyce's actions were based on her gender.

¶ 20 In her response in opposition to defendants' motion to dismiss, plaintiff first urged application of the longer statute of limitations set forth in section 82/20 of the Gender Violence Act. See 740 ILCS 82/20 (West 2018) ("An action based on gender-related violence as defined in paragraph (1) *** of Section 5 must be commenced within 7 years after the cause of action accrued ***. An action based on gender-related violence as defined in paragraph (3) of Section 5 must be commenced within 2 years after the cause of action accrued ***."). Plaintiff further argued that the Tort Immunity Act's one-year statute of limitations did not apply because Boyce's alleged actions were willful and wanton, citing, *inter alia*, section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2018) ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.").

¶ 21 Plaintiff further argued that collateral estoppel does not apply because her Gender Violence Act claim was never ruled on in the federal proceeding given the district court's relinquishment of jurisdiction over the state law claims. Juxtaposing the elements of a Gender Violence Act claim with the elements of her federal claims, plaintiff also asserted that the issues are not identical for purposes of collateral estoppel. And third, plaintiff argued that she adequately pled gender-based violence, citing her allegations regarding being the sole woman at the scene.

¶ 22 Following argument on January 16, 2024, the circuit court granted defendants' motion to dismiss the amended complaint pursuant to section 2-619(a)(5) on the basis that the action was

10

time barred. Citing our supreme court's decision in *Paszkowski*, the circuit court reasoned that the plain language of section 8-101(a) and its broad application to any claim against a local governmental entity and its employees, even to allegations of willful and wanton conduct, controlled over the statute of limitations in the Gender Violence Act. See *Paszkowski*, 213 Ill. 2d at 13. Accordingly, since plaintiff did not file her initial complaint in state court until more than one year after the district court relinquished jurisdiction over the state law claims, the circuit court found the action to be time barred and dismissed the case with prejudice. The circuit court did not address defendants' alternative bases for relief.

¶ 23        Plaintiff timely appealed.

¶ 24                                II. ANALYSIS

¶ 25        On appeal, plaintiff argues that the circuit court erred in granting defendants' section 2-619(a)(5) motion to dismiss the amended complaint as untimely. We review *de novo* dismissals under section 2-619(a)(5). *Alvarez v. Pappas*, 229 Ill. 2d 217, 220 (2008). On appeal, as in the trial court, plaintiff does not contest defendants' position that, once the district court relinquished supplemental jurisdiction over the state law claims, she was required to "commence a new action within one year or within the remaining period of limitation, whichever is greater ***." See 735 ILCS 5/13-217 (West 1994). However, plaintiff maintains that the "remaining period of limitation" was that set forth in section 82/20 of the Gender Violence Act, which provides in relevant part:

> "An action based on gender-related violence as defined in paragraph (1) *** of Section 5 must be commenced within 7 years after the cause of action accrued ***. An action based on gender-related violence as defined in paragraph (3) of Section 5 must be commenced within 2 years after the cause of action accrued ***." 740 ILCS 82/20 (West 2018).

¶ 26    Count I of the amended complaint alleged gender-related violence as defined in section 82/5(1) with a seven-year statute of limitations; count II of the amended complaint alleged gender-related violence as defined in section 82/5(3) with a two-year statute of limitations. Plaintiff filed her initial complaint in state court on July 17, 2023, some 14 months after entry of the district court's May 10, 2022, order relinquishing jurisdiction over the state law claims. Thus, according to plaintiff, this action was timely filed within the Gender Violence Act's statutes of limitations, and the circuit court erred in dismissing the amended complaint as untimely pursuant to the Tort Immunity Act's one-year statute of limitations. We disagree, as set forth below.

¶ 27    Initially, however, defendants argue that plaintiff's brief, or minimally, her statement of facts section, should be stricken for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) (the statement of facts section "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal ***."). We agree that portions of plaintiff's statement of facts are argumentative and lack appropriate record citation, but, even more egregiously, throughout the statement of facts, plaintiff provides record citation to her initial complaint rather than the operative amended complaint. The rules of procedure regarding appellate briefs are not mere suggestions, and when procedural violations interfere with our review of the issues on appeal, it is within our discretion to, *inter alia*, strike the brief for failure to comply with the rules. See *In re Marriage of Buonincontro*, 2022 IL App (2d) 210380, ¶ 34. However, where, as here, the rule violations do not hinder our review, we decline the request to strike the brief or the statement of facts and simply disregard any noncompliant statements. See *id.* We turn to the parties' arguments.

12

¶ 28    Defendants counter that the circuit court properly dismissed the amended complaint as barred by the one-year statute of limitations set forth in section 8-101(a) of the Tort Immunity Act. Alternatively, defendants argue that the amended complaint was properly dismissed because it was precluded by collateral estoppel principles. Because we hold that the circuit court properly dismissed the amended complaint as barred by the Tort Immunity Act's statute of limitations, we do not address defendants' alternative argument.

¶ 29    Section 8-101(a) of the Tort Immunity Act provides: "No civil action other than an action described in subsection (b) [medical malpractice actions] may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a) (West 2022). The statute further provides that, "[f]or purposes of this Article, the term 'civil action' includes any action, whether based upon the common law or statutes or Constitution of this State." *Id.* § 8-101(c). In *Paszkowski*, our supreme court confirmed the expansive reach of section 8-101[3] to claims against a local governmental entity and its employees. *Paszkowski*, 213 Ill. 2d at 13.

¶ 30    In *Paszkowski*, the court considered whether the four-year statute of limitations for construction-related tort claims set forth in section 13-214(a) of the Code (735 ILCS 5/13-214(a) (West 1998)), rather than the Tort Immunity Act's one-year statute of limitations set forth in section 8-101, governed the plaintiff's negligence suit against the Metropolitan Water Reclamation District of Greater Chicago. *Paszkowski*, 213 Ill. 2d at 4. The plaintiff's position was that the four-

---

[3] At the time, the statute of limitations at issue was set forth in section 8-101, rather than section 8-101(a). The statute was amended in 2003 to carve out medical malpractice claims and make them subject to a two-year statute of limitations, at which point the subsections were added, reflecting the current version of the statute. Pub. Act 93-11, § 5 (eff. June 4, 2003).

year limitations period in section 13-214(a) governed because it is the more recently enacted of the two provisions and was more specific than section 8-101, which applies to any civil action against a local governmental entity for any injury. *Id.* at 8. Rejecting these arguments, the supreme court explained that "it is the legislature's intent that is of foremost importance." *Id.* at 12 (citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 312 (2001) (holding that the one-year limitations period in section 8-101 controlled over the eight-year repose period in section 13-212(b) of the Code (735 ILCS 5/13-212(b) (West 1994) for a minor's medical malpractice action such that the one-year limitations period applied once the minor turned 18)). The supreme court reasoned that the language of section 8-101 reflects the clear legislative intent to apply the one-year statute of limitations " ' "*broadly* to *any possible claim* against a local governmental entity and its employees." ' " (Emphases in original.) *Paszkowski*, 213 Ill. 2d at 13 (quoting *Ferguson*, 202 Ill. 2d at 312 (quoting *Tosado v. Miller,* 188 Ill. 2d 186, 199 (1999) (Heiple, J., specially concurring)). "Given the breadth of this intent," the supreme court held that "the comprehensive protection afforded by section 8-101 necessarily controls over other statutes of limitation or repose." *Id.* (citing *Ferguson*, 202 Ill. 2d at 312). Thus, the court held that the one-year limitations period in section 8-101 of the Tort Immunity Act governed and that the plaintiff's action was therefore time-barred. *Id.*

¶ 31      Applying the *Paszkowski* reasoning here, the one-year statute of limitations in section 8-101(a) controls over the limitations set forth in the Gender Violence Act. Plaintiff's attempt to distinguish *Paszkowski* because it involved the statute of limitations for construction-related claims rather than the statute of limitations for Gender Violence Act claims is unavailing. Nothing in the *Paszkowski* decision suggested that the holding was limited to cases involving section 13-214(a). Rather, in sweeping language, the supreme court noted the legislative intent to apply section 8-101

14

to "any possible claim" against a local governmental entity and its employees, concluding broadly that, given the breadth of this intent, "section 8-101 necessarily controls over other statutes of limitation or repose." *Id.*; see also *Lee v. Naperville Community Unit School District 203*, 2015 IL App (2d) 150143, ¶ 14 ("the court's reasoning [in *Paszkowski*] is in no way limited to cases implicating the four-year limitations period for construction-related claims" and "applies with equal force where an action that would *otherwise* be governed solely by section 13-211 [735 ILCS 5/13-211 (West 2014) (tolling provision for minors and persons under legal disability)] is commenced against a local public entity or an employee of a local public entity") (Emphasis in original.).

¶ 32        Plaintiff nevertheless persists that the Gender Violence Act statute of limitations should control because it is more specific than the Tort Immunity Act statute of limitations. But the supreme court in *Paszkowski* already rejected reliance on the specificity of the statutory provision, instead determining that it is the legislative intent that is "of foremost importance." *Paszkowski*, 213 Ill. 2d at 12. Plaintiff invites us to disregard the rationale in *Paszkowski* (and adopt the rationale set forth in the dissenting opinion in *Paszkowski*) because its logic does not coincide with traditional statutory construction principles. We disagree, and moreover, as an intermediate appellate court, we are bound by the supreme court's ruling. See *Illinois Labor Relations Board v. Chicago Transit Authority*, 341 Ill. App. 3d 751, 758 (2003). Plaintiff also cites *Zimmer v. Village of Willowbrook*, 242 Ill. App. 3d 437 (1993), as support for her position that the Gender Violence Act statute of limitations should control over the Tort Immunity Act's statute of limitations. In *Zimmer*, the court held that the four-year statute of limitations for construction-related claims in section 13-214(a) was a "limited exception" to section 8-101. *Id.* at 443-44. However, *Zimmer* was

an appellate court decision that predated our supreme court's decision in *Paszkowski*, which of course controls. *Paszkowski*, 213 Ill. 2d at 13. Thus, plaintiff's reliance on *Zimmer* is misplaced.

¶ 33 As a final matter, plaintiff argues that the Tort Immunity Act's one-year statute of limitations in section 8-101(a) does not apply because she alleges willful and wanton conduct. This argument was flatly rejected in *Luciano v. Waubonsee Community College*, 245 Ill. App. 3d 1077, 1085-87 (1993), where the plaintiff's complaint against a campus police cadet for negligence and false arrest included willful and wanton allegations. The appellate court concluded broadly that allegations of willful and wanton conduct simply "do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in section 8-101." *Id.* at 1086; accord *Cooperwood v. Farmer*, 315 F.R.D. 493, 500 (N.D. Ill. 2016) ("[A]lthough the Tort Immunity Act does not extend immunity to acts of public employees that are wil[l]ful and wanton, the statute of limitations under the Tort Immunity Act applies to public employees, even if the public employee's conduct is wil[l]ful and wanton."); see also *Griffin v. Willoughby*, 369 Ill. App. 3d 405, 411-12 (2006) ("the limitations period and the likely success of an immunity defense are not connected"); *Racich v. Anderson*, 241 Ill. App. 3d 336, 339-40 (1993) (same).

¶ 34 In sum, the circuit court did not err in granting defendants' motion to dismiss the amended complaint as untimely pursuant to the Tort Immunity Act's one-year statute of limitations set forth in section 8-101(a).

¶ 35 III. CONCLUSION

¶ 36 For the reasons stated, we affirm the circuit court's order granting defendants' section 2-619(a)(5) motion to dismiss plaintiff's amended complaint with prejudice.

¶ 37 Affirmed.

16